# 23-0686-cv

## United States Court of Appeals
### for the
## Second Circuit

MARY DOE,

*Plaintiff-Appellant,*

JANE SMITH, JILL PARK, ANN JONES, DR. AMY MOE,

*Plaintiffs,*

— v. —

KATHY HOCHUL, as Governor of the State of New York in her official capacity, LETITIA JAMES, as Attorney General of the State of New York in her official capacity, STEPHANIE SCHULMAN, Deputy Director, Division of Hospitals and Diagnostic and Treatment Centers, New York State Department of Health in her offical capacity, FKA Deirdre Astin, M.D. ARTHUR S. HENGERER, Chair, New York State Department of Health Office of Professional Medical Conduct in his official capacity,

*(For Continuation of Caption See Inside Cover)*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

## BRIEF OF *AMICI CURIAE* PREGNANCY JUSTICE AND NEW YORK UNIVERSITY SCHOOL OF LAW REPRODUCTIVE JUSTICE CLINIC IN SUPPORT OF DEFENDANTS-APPELLEES

SARAH WHEELER
*Adjunct Professor of Clinical Law*
NEW YORK UNIVERSITY SCHOOL OF LAW
245 Sullivan Street, 5th Floor
New York, New York 10012
(203) 253-6399

DANA SUSSMAN
*Deputy Executive Director*
PREGNANCY JUSTICE
575 Eighth Avenue, Suite 700
New York, New York 10018
(646) 854-1454
dana.s@pregnancyjusticeus.org

*Attorneys for Amici Curiae*

CP COUNSEL PRESS    (800) 4-APPEAL • (325123)

M.D., J.D. HOWARD A. ZUCKER, DEPUTY COMMISSIONER SARAH
BENSON, New York State Education Department's Office of the Prosessions in
her official capacity, DONNA FRESCATORE, New York Medicaid Director, in
her official capacity, SHEILA J. POOLE, Commissioner of the New York State
Office of Children and Family Services (OCFS), in her official capacity,

*Defendant-Appellees.*

## Corporate Disclosure Statement

Pursuant to Federal Rule of Appellate Procedure 26.1, *amici curiae* New York University School of Law Reproductive Justice Clinic (the "Clinic") and Pregnancy Justice hereby certify that they have no parent corporation and that no publicly held corporations own 10% or more of their stock. The Clinic operates under Washington Square Legal Services, Inc. which is a not-for-profit corporation affiliated with New York University and New York University School of Law, also not-for-profit educational organizations. None of these organizations are publicly held or for profit.

Table of Contents

Corporate Disclosure Statement ................................................................i

Table of Authorities ........................................................................iv

Interest of Amicus Curiae ....................................................................1

Reasons Why Leave to File Should Be Granted.................................................2

Introduction and Summary of Argument.......................................................5

Argument....................................................................................8

    I.     Plaintiff-Appellants Ask This Court to Judicially Construct Fetal Personhood Under the U.S. Constitution ...................................8

    II.    *Dobbs* Does Not Recognize Fetal Personhood and Requires Deference to the RHA, a New York Law That Is Plainly Inconsistent with Fetal Personhood ......................................9

         A.    The RHA Clarifies and Re-Affirms New York's Longstanding Rejection of Fetal Personhood..........................10

         B.    Recognizing Fetal Personhood Under the U.S. Constitution Would Nullify RHA Reproductive Rights Guarantees in Violation of Dobbs ...........................11

    III.   Recognizing Fetal Personhood Fuels Pregnancy Criminalization......12

    IV.   Recognizing Fetal Personhood Diminishes the Fundamental Rights of Women and Pregnant People ...........................................18

         A.    Fetal Personhood Leads to Deprivations of Fundamental Rights to Bodily Autonomy, Physical Liberty, and Medical Decision-Making ......................................20

         B.    Fetal Personhood Leads to Deprivations of Fundamental Fourth and Fourteenth Amendment Rights to Bodily and Familial Privacy .......................................24

C.    Fetal Personhood Results in Unconstitutional Sex-Based Discrimination..............................................................................25

CONCLUSION .......................................................................................30

# Table of Authorities

## Cases

*B.S. v. State*,
  966 N.E.2d 619 (Ind. Ct. App. 2012), *overruled on other grounds by Fry v. State*, 990 N.E.2d 429, 451 (Ind. 2013) ....................................................13

*Back v. Hastings on Hudson Union Free Sch. Dist.*,
  365 F.3d 107 (2d Cir. 2003) ...................................................26

*Bostock v. Clayton Cnty.*,
  140 S. Ct. 1731 (2020) ...................................................26

*Bradwell v. Illinois*,
  83 U.S. 130 (1873) ...................................................26

*Burton v. State*,
  49 So. 3d 263 (Fla. Dist. Ct. App. 2010)...................................................22

*Byrn v. New York City Health & Hosps. Corp.*,
  31 N.Y.2d 194, 200-03 (N.Y. App. Ct. 1972)...................................................9

*Cal. Fed. Sav. & Loan Ass'n v. Guerra*,
  479 U.S. 272 (1987) ...................................................27

*Caswell v. Etowah Cnty.*,
  No. 4:23-cv-01380-ACA-NAD (N.D. Ala. Oct. 13, 2023)...................................................18

*City of Cleburne v. Cleburne Living Center*,
  473 U.S. 432 (1985) ...................................................18, 22

*Cruzan v. Dir., Mo. Dep't of Health*,
  497 U.S. 261 (1990) ...................................................20

*Dobbs v. Jackson Women's Health Organization*,
  142 S. Ct. 2228 (2022) ...................................................*passim*

*Dray v. Staten Island Univ. Hosp.*,
  75 N.Y.S.3d 59 (N.Y. App. Div. 2018)...................................................21

*Elaine W. v. N. Gen. Hosp*,
  81 N.Y.2d 2d 211 (N.Y. 1993)...................................................26

*Ex parte Ankrom*,
  152 So.3d 397 (Ala. 2013) ...................................................18

*Ferguson v. City of Charleston*,
532 U.S. 67 (2001) ......................................................................24, 25

*Foucha v. Louisiana*,
504 U.S. 71 (1992) ......................................................................22

*Frontiero v. Richardson*,
411 U.S. 677 (1971) ....................................................................26

*Geduldig v. Aiello*,
417 U.S. 484 (1974) ....................................................................27

*In re Jamaica Hosp.*,
491 N.Y.S.2d 898 (N.Y. Sup. Ct. 1985) ....................................21

*Int'l Union v. Johnson Controls, Inc.*,
499 U.S. 187 (1991) ....................................................................27

*Jorgensen v. County of Suffolk*,
588 F.Supp.3d 51 (E.D.N.Y. 2021) ............................................14

*Lawrence v. Texas*,
539 U.S. 558 (2003) ....................................................................11

*Loertscher v. Anderson*,
259 F. Supp. 3d 902 (W.D. Wis. 2017), *vacated*, 893 F.3d 386
(7th Cir. 2018) ............................................................................23

*Lujan v. Defs. Of Wildlife*,
504 U.S. 555 (1992) ......................................................................8

*Matter of Fosmire v. Nicoleau*,
75 N.Y.2d 218 (N.Y. App. Ct. 1990) ..........................................20

*Matter of Perra*,
827 N.Y.S.2d 587 (Sup. Ct. 2006) ..............................................23

*McCormack v. Herzog*,
788 F.3d 1017 (9th Cir. 2015) ....................................................12

*Meyer v. Nebraska*,
262 U.S. 390 (1923) ....................................................................24

*Muller v. Oregon*,
208 U.S. 412 (1908) ....................................................................27

*Nevada Department of Human Services v. Hibbs*,
 538 U.S. 721 (2003) ............................................................27

*Parham v. J.R.*,
 442 U.S. 584 (1979) ...........................................................20

*People v. Jorgensen*,
 41 N.E.3d 778 (N.Y. 2015). ............................................. 11, 13-14, 15

*People v. Jorgensen,*
 907 N.Y.S. 2d 439, 2010 WL 796830 (N.Y. Sup. Ct. 2010) ....................7, 13, 14

*People v. Updyke*,
 No. 2017-0085CR (N.Y. Steuben Cnty. Ct. Sept. 21, 2017) ..............................16

*People v. Vega*,
 170 A.D.3d 1266 (N.Y. App. Div. 2019)...................................... 10-11

*Reed v. Reed,*
 404 U.S. 71 (1971) ............................................................26

*Rochin v. California*,
 342 U.S. 165 (1992) ...........................................................20

*Roe v. Wade*,
 410 U.S. 113 (1973) ...........................................................8

*Unborn Child of Samantha Burton*,
 No. 2009 CA 1167, 2009 WL 8628562 (Fla. Cir. Ct. Mar. 27, 2009)................22

*Union Pac. Ry. Co. v. Botsford*,
 141 U.S. 250 (1891) ...........................................................20

*United States v. Carolene Products*,
 304 U.S. 144 (1984) ...........................................................8

*United States v. Virginia*,
 518 U.S. 515 (1996) .........................................................26, 27

*Washington v. Glucksberg*,
 521 U.S. 702 (1997) ...........................................................22

*Whitner v. State,*
 492 S.E.2d 777 (S.C. Sup. Ct. 1997)................................................25

## Statutes

U.S. Const., amend. I ........................................................................2, 5, 8

U.S. Const., amend. IV ...................................................................24, 25

U.S. Const., amend. XIV ..................................................................*passim*

U.S. Const., amend. XIV, §1 ...................................................................8

Criminal Procedure Law § 700.05 ..........................................................5

Fed. R. App. P. 29(a)(4)(E).....................................................................1

L. 2019, ch. 1 (N.Y. Pub. Health Law § 2599-aa – 2599bb (McKinney) ....... *passim*

N.Y. Exec. Law § 296(2)(a)....................................................................26

N.Y. Penal Law § 125.00 ...................................................................5, 21

N.Y. Penal Law § 125.05 ...............................................................5, 14, 21

N.Y. Penal Law § 125.15 .......................................................................5

N.Y. Penal Law § 220.21 .....................................................................16

Pregnancy Discrimination Act, Pub. L. No. 95-555, 92 Stat. 2076 (1978)............26

## Other Authorities

Amnesty International, *USA: Criminalizing Pregnancy: Policing Pregnant Women Who Use Drugs in the USA* (May 23, 2017), https://www.amnesty.org/en/documents/amr51/6203/2017/en/ ...........................4

Amy Yurkanin, *How One Alabama County Declared War on Pregnant Women Who Use Drugs*, Marshall Project (July 26, 2023), https://www.themarshallproject.org/2023/07/26/alabama-pregnant-women-drugs .......................................................................................25

Application for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 by a Person in Custody, *Beltran v. Loenish*, 2:13-cv-01101 (E.D. Wis. Sept. 30, 2013).....................................................................................23

Brandon Hasbrouck, *The Antiracist Constitution*, 102 B.U. L. Rev 87 (2022)................................................................................................20

Brief for National Advocates for Pregnant Women, et al. as Amici Curiae Supporting Respondent at 24-25, *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228 (2022) (No. 19-1392) ...............................................13

Brief of Equal Protection Scholars Brief of Equal Protection Constitutional Law Scholars as Amici Curiae Supporting Respondents, *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228 (2022) ...................................................27

*Crystal v. Garnet Health Medical Center*, filed before the New York State Division of Human Rights (Dec. 17, 2021), https://www.nyclu.org/sites/default/files/field_documents/nyclu_dhr_complaint_2021.pdf.......................................................................................29

Dána-Ain Davis, *Obstetric Racism: The Racial Politics of Pregnancy, Labor, and Birthing*, 38 MED. ANTHROPOLOGY 560 (2019) ..............................19

David Steinkraus, *Pregnant and Addicted—Hooked on OxyContin, Woman Remains Confined as She Seeks Help for Herself, Her Unborn Baby*, J. TIMES (May 12, 2005), https://journaltimes.com/news/local/pregnant-and-addicted-hooked-on-oxycontin-woman-remains-confined-as/article_d302a479-2a58-5416-baec-0b6cef070fae.html?mode=comments......23

DOROTHY ROBERTS, KILLING THE BLACK BODY 10 (2d ed. 2017) .........................28

Dorothy Roberts, *Punishing Drug Addicts Who Have Babies: Women of Color, Equality, and the Right of Privacy*, 104 HARV. L. REV. 1419 (1991)................................................................................................ 19-20, 28

DOROTHY ROBERTS, SHATTERED BONDS: THE COLOR OF CHILD WELFARE viii (2002).................................................................................................24

F. GARY CUNNINGHAM ET AL., WILLIAMS OBSTETRICS 548 (26th ed. 2022), https://accessmedicine-mhmedical-com.proxy.library.nyu.edu/content.aspx?bookid=2977&sectionid=257580164#1190761308 ...............................................................................21

*Facts Are Important: Understanding and Navigating Viability*, AM. COLL. OF OBSTETRICIANS & GYNECOLOGISTS https://www.acog.org/advocacy/facts-are-important/understanding-and-navigating-viability...............................................................................3

In Our Own Voice: National Black Women's Reproductive Justice Agenda, et al., *Reimagining Policy*: *In Pursuit of Black Reproductive Justice* 8 (2023), https://blackrj.org/wp-content/uploads/2023/06 /RJPolicyAgenda2023.pdf ...................................................................2

Jason Jordan, *Hornell Woman Charged in Baby Overdose Death*, Evening Trib. (Apr. 4, 2017, 4:42 PM), https://www.eveningtribune.com/story/news/courts/2017/04/04/hornell-woman-charged-in-baby/21598047007/ ............................................16

Jessica Robinson, *Idaho Woman Arrested for Abortion is Uneasy Case for Both Sides*, NPR (Apr. 9, 2012, 1:46 PM), available at: https://www.npr.org/templates/story/story.php?storyId=150312812 ............ 12-13

Linda Villarosa, *Why America's Black Mothers and Babies Are in a Life-or-Death Crisis*, N.Y. Times Mag. (Apr. 11, 2018) .................................................19

Loretta J. Ross & Rickie Solinger, Reproductive Justice: An Introduction 50-52 (2017) ...........................................................28

Lynn Paltrow, *Constitutional Rights for the "Unborn" Would Force Women to Forfeit Theirs*, Ms. Mag. (Apr. 15, 2021), available at: https://msmagazine.com/2021/04/15/abortion-constitutional-rights-unborn-fetus-14th-amendment-womens-rights-pregnant/ ....................... 11-12, 18

Michele Goodwin, Policing the Womb: Invisible Women and the Criminalization of Motherhood 11 (2020) .................................17, 19, 21

Movement for Family Power et al., *How the Foster System Has Become Ground Zero for the U.S. Drug War* 55 (2020), https://www.movementforfamilypower.org/ground-zero ...................................24

NY Senate Debate on Senate Bill S240, Jan. 22, 2019 ..........................................17

N.Y. State Div. of Human Rights, Determination After Investigation Letter (October 20, 2022).......................................................................... 29-30

Pregnancy Justice, *When Fetuses Gain Personhood: Understanding the Impact on IVF, Contraception, Medical Treatment, Criminal Law, Child Support, and Beyond*, 4, 7-8 (Aug. 17, 2022), https://www.pregnancyjusticeus.org/wp-content/uploads/2023/05/fetal-personhood-with-appendix-UPDATED-1.pdf ........................................................4

Purvaja S. Kavattur, *The Rise of Pregnancy Criminalization: A Pregnancy Justice Report*, 16 (Sept. 2023), https://www.pregnancyjusticeus.org/wp-content/uploads/2023/09/9-2023-Criminalization-report.pdf ......................*passim*

Reva B. Siegel, *The Pregnant Citizen, from Suffrage to the Present*, 19TH AMENDMENT SPECIAL EDITION GEO. L.J. 167 (2020) .........................................27

Samantha House, *Pregnant Woman Jailed to Keep Her from Using Drugs*, THE CITIZEN (Mar. 16, 2012), https://auburnpub.com/article_be857c6a-6f14-11e1-9be3-001871e3ce6c.html....................................................................16

*State v. Pierce*,
Oswego County Sheriff's Department, Arrest Report No. 07-4625 (April 9, 2007) ....................................................................................................15

**Interest of Amici Curiae[1]**

Pregnancy Justice is a legal advocacy non-profit organization fighting

for the civil and human rights of pregnant people, focusing on those most

likely to be targeted for investigation, arrest, or family separation in

connection with their pregnancies—poor people, people of color, and people

who use drugs. Pregnancy Justice defends people charged with crimes in

connection to their pregnancies or pregnancy outcomes, challenges unjust laws

and policies targeting pregnant people for surveillance, punishment, and

control in the civil child welfare system and the criminal legal system and

conducts research and analysis documenting the scope of pregnancy-related

criminalization. As the only legal advocacy organization focused on the

criminal defense of people charged with pregnancy-related crimes across all

pregnancy outcomes, Pregnancy Justice and its clients are uniquely impacted

by decisions that embed concepts of fetal personhood into law, which, as our

decades-long work demonstrates, places pregnant people at unique risk of

rights violations, criminal charges, and family surveillance and separation.

The Reproductive Justice Clinic at New York University School of Law (the

"Clinic"), a law school clinic run under the umbrella of Washington Square Legal

---

[1] Pursuant to Fed. R. App. P. 29(a)(4)(E), *amici* state that no party's counsel authored this brief in whole or in part, and no party or person other than *amici* and their members contributed money toward preparing or filing of this brief.

Services, Inc., houses attorney-professors and student advocates who work to defend and advance the rights and health of all women and pregnant people. The Clinic adheres to the reproductive justice principle that all people have: (1) the right to not have a child; (2) the right to have a child; (3) the right to the social and economic supports to parent, free from varying forms of interpersonal, community, and/or state-based violence; and (4) the right to sexual expression and sexual pleasure.[2] Guarantees of dignity, equality, autonomy, and body sovereignty are essential to realizing these rights. The Clinic has expertise in the ways recognizing fetal personhood harms the rights and lives of women and pregnant people, especially those experiencing pregnancy together with racism and other forms of discrimination.

## Reasons Why Leave to File Should Be Granted

Plaintiff-Appellants claim that fetuses are people with Article III standing to challenge New York's Reproductive Health Act (the "RHA") under the First and Fourteenth Amendments to the U.S. Constitution.[3] By these claims, Plaintiff-

---

[2] In Our Own Voice: National Black Women's Reproductive Justice Agenda, et al., *Reimagining Policy: In Pursuit of Black Reproductive Justice* 8 (2023), https://blackrj.org/wp-content/uploads/2023/06/RJPolicyAgenda2023.pdf.

[3] Plaintiff-Appellants refer to "viable" fetuses, but viability has no single definition and includes factors beyond gestational age. *See Facts Are Important: Understanding and Navigating Viability*, Am. Coll. of Obstetricians & Gynecologists https://www.acog.org/advocacy/facts-are-important/understanding-and-navigating-viability (last visited Oct. 5, 2023). Plaintiff-Appellants' claims also are untethered to any concept of viability; they say all developmental stages, including fertilized eggs and embryos, are "living human

Appellants ask this Court to recognize fetuses as people with constitutional rights equal to—or greater than—the rights of women and pregnant people (hereinafter "fetal personhood").

Based on years of working on cases in states where fetal personhood is recognized, *amici* have expertise in the legal and human harms of recognizing fetal personhood. *Amici*'s proposed brief makes three points explaining why this Court should reject the constitutional claims on behalf of fetuses, and with them the notion of fetal personhood under the U.S. Constitution.

First, allowing Plaintiff-Appellants' claims on behalf of fetuses against the RHA would recognize fetal personhood under the U.S. Constitution, a result that would subvert New York's duly enacted RHA. The RHA codifies fundamental reproductive rights, de-criminalizes abortion, and re-affirms pre-RHA law that fetuses are not persons in New York. In these ways, the RHA is plainly inconsistent with any notion of fetal personhood. The U.S. Supreme Court's decision in *Dobbs v. Jackson Women's Health Organization* 142 S. Ct. 2228 (2022) mandates that states retain full power to regulate abortion, which New York

---

being[s]." A-009 Compl. ¶ 12, A-134 PAC ¶ 12. In fact, an unimplanted fertilized egg is not even a pregnancy; but where fetal personhood is recognized, all stages of development consistently and wrongly are conflated with "fetuses" and "people." *See* Pregnancy Justice, *When Fetuses Gain Personhood*, 4, 7-8 (Aug. 17, 2022), https://www.pregnancyjusticeus.org/wp-content/uploads/2023/05/fetal-personhood-with-appendix-UPDATED-1.pdf.

does through the RHA. *Id.* at 2279. *Dobbs* also does not recognize constitutional fetal personhood. *Id.* at 2256.

Second, recognizing fetal personhood fuels pregnancy criminalization. Pregnancy criminalization is the practice of punishing women and pregnant people for actions or events interpreted as harmful to their own pregnancies. Pregnancy criminalization happens through laws, policies, and practices that explicitly or surreptitiously single out women and pregnant people and discriminatorily punish or criminalize them in ways that would not happen but for their actual or potential pregnancy.[4] Amnesty International, USA: *Criminalizing Pregnancy: Policing Pregnant Women Who Use Drugs in the USA* (May 23, 2017).[5]

Third, recognizing fetal personhood diminishes the fundamental constitutional rights of women and pregnant people.

*Amici'*s proposed brief develops each of these points, which are important to this case but beyond the scope of the merits briefing.

---

[4] "Pregnancy criminalization" in this proposed brief incorporates this definition.

[5] https://www.amnesty.org/en/documents/amr51/6203/2017/en/.

## Introduction and Summary of Argument

*Amici* urge this Court to affirm the district court's denials of First and Fourteenth Amendment claims on behalf of fetuses against the RHA. *Amici* respectfully submit that any other outcome would take the dangerous and radical step of recognizing fetuses as people under the U.S. Constitution with legal rights equal to—or greater than—the rights of women and pregnant people. This Court should reject that idea and outcome for three reasons.

First, nothing in *Dobbs v. Jackson Women's Health Organization* supports recognizing fetal personhood under the U.S. Constitution. *See Dobbs*, 142 S. Ct. at 2256 ("[O]ur decision is not based on any view about when a State should regard prenatal life as having rights or legally cognizable interests."). *Dobbs* returns regulation of abortion to states. *Id.* at 2279. The RHA is landmark state legislation guaranteeing fundamental reproductive rights to all women and pregnant people in New York, de-criminalizing abortion and moving it into the public health law, and re-affirming pre-RHA law that a fetus is not a person. *See* L. 2019 N.Y. ch. 1, 2019 N.Y. S.B. 240 (McKinney), §§ 1-2 (codifying reproductive rights by adding N.Y. Pub. Health Law §§ 2599-aa, 2599-bb), §§ 5-10 (amending N.Y. Penal Law §§ 125.00, 125.05, 125.15, 125.20, and Criminal Procedure Law § 700.05). In these ways, the RHA is inconsistent with any notion of fetal personhood. Recognizing fetal personhood erases the essential distinctions that the RHA maintains—

between fetuses and people, and between abortion and homicide. *Id.* Recognizing fetal personhood also would clash with the RHA's codification of fundamental reproductive rights, because when fetal personhood is recognized, fetal rights often eclipse the fundamental rights of women and pregnant people.[6]  The RHA was passed to prevent these harms.

Second, recognizing fetal personhood fuels pregnancy criminalization. The risk of pregnancy criminalization happening in New York if this Court recognizes fetal personhood under the U.S. Constitution is not hypothetical or hyperbolic. *See* Purvaja S. Kavattur, *Rise of Pregnancy Criminalization: A Pregnancy Justice Report*, 4, 20 (Sept. 2023), [hereinafter *Rise of Pregnancy Criminalization*].[7] Part III gives examples of pregnancy criminalization in New York. It also discusses harmful practices currently prevalent in New York—primarily drug testing of pregnant people and women and reporting them to child welfare—that recognizing fetal personhood would exacerbate through criminalization.

Importantly, the examples of pregnancy criminalization in New York that *amici* provide were not based on laws recognizing fetal personhood. But the laws the RHA amended sometimes created confusion, making New Yorkers susceptible

---

[6] Part IV discusses conflicts between federal statutory and federal constitutional rights and fetal personhood, but the same logic applies to RHA guarantees.

[7] Available at: https://www.pregnancyjusticeus.org/wp-content/uploads/2023/09/9-2023-Criminalization-report.pdf

to pregnancy criminalization based on misapplications of pre-RHA law. *See, e.g.*, *People v. Jorgensen*, 907 N.Y.S. 2d 439, 2010 WL 796830 at \*4-5 (N.Y. Sup. Ct. 2010). The RHA responded to that problem by re-affirming that "person" in the homicide and related offenses laws means only "a person who has been born and is alive[,]" and removing abortion from the criminal law and placing it in the public health law. *See* L. 2019 ch. 1, §§ 2, 5-10. Recognizing federal constitutional fetal personhood would undo this settled state law in contravention of *Dobbs*. 142 S. Ct. at 2279.

Third, fetal personhood diminishes the fundamental constitutional rights of women and pregnant people and thereby degrades the U.S. Constitution. Women and pregnant people have fundamental rights to bodily autonomy, medical decision-making, and physical liberty; to privacy; to parent; and to freedom from sex-based discrimination. Pregnancy is no exception to the rule that constitutional rights can be infringed only in narrow circumstances. But the solicitude fundamental rights demand is consistently violated when fetal personhood is recognized, resulting in sweeping subordinations of women's fundamental rights.

Critically, all the harms *amici* describe are especially prevalent and brutal for people experiencing pregnancy at the intersection of marginalized social identities, particularly being poor or Black or both. *Rise of Pregnancy Criminalization* at 2, 4.

7

For these reasons, this Court should affirm the denials of the constitutional claims on behalf of fetuses and let the RHA stand.

## Argument

### I. Plaintiff-Appellants Ask This Court to Judicially Construct Fetal Personhood Under the U.S. Constitution.

Plaintiff-Appellants claim that fetuses are people with Article III standing to challenge the RHA. They venture that the RHA "discriminates" against "vulnerable" fetuses by denying them Fourteenth Amendment rights to life, liberty, and equal protection, and First Amendment rights to legal redress. *See, e.g.*, Compl. at A-060-68 ¶¶ 255-329; PAC at A-199-209 ¶¶ 279-289.[8] But only born people have Article III standing to bring federal constitutional claims. *See Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560 (1992). The Fourteenth Amendment makes being "born" the determinative event for substantive guarantees to attach. U.S. Const., amend. XIV, §1. And precedent dictates that fetuses are *not* persons under the Fourteenth Amendment. *Roe v. Wade*, 410 U.S. 113, 158 (1973) ("[T]he word

---

[8] Remarkably—and degrading U.S. history—Plaintiff-Appellants suggest fetuses are similar under the Fourteenth Amendment to formerly enslaved people. Compl. at A-011 ¶ 21, PAC at A-135 ¶¶ 19-21. Plaintiff-Appellants say Fourteenth Amendment guarantees were "drafted to remedy the historic injustice of excluding an entire category of human beings from the protection of the law" and that fetuses are such a class. Compl. at A-011 ¶ 21, PAC at A-135 ¶¶ 19-21. Plaintiff-Appellants' original complaint invoked *United States v. Carolene Products*, 304 U.S. 144, 152 n.4 (1984) to liken fetuses to a suspect classification. Compl. at A-066 ¶ 276 (alleging fetuses are a "discrete and insular minority" excluded from the "ordinary political process" and that statutes "burdening" fetuses demand "more searching judicial inquiry").

'person,' as used in the Fourteenth Amendment, does not include the unborn."). *Dobbs v. Jackson Women's Health Organization* did not change this part of *Roe*. 142 S. Ct. 2228, 2256 (2022) (holding the Fourteenth Amendment contains no abortion right, not that fetuses are constitutional persons); *see also Byrn v. New York City Health & Hosps. Corp.*, 31 N.Y.2d 194, 203 (N.Y. App. Ct. 1972) ("The Constitution does not confer or require legal personality for the unborn.").

## II. *Dobbs* Does Not Recognize Fetal Personhood and Requires Deference to the RHA, a New York Law That Is Plainly Inconsistent with Fetal Personhood.

The U.S. Supreme Court's decision in *Dobbs v. Jackson Women's Health Organization* is irrelevant to this case except for its mandate that abortion regulation belongs to states, and its recognition that a fetus is not a person under the U.S. Constitution. 142 S. Ct. 2228, 2259 ("[W]e thus return the power to weigh arguments [about abortion] to the people and their elected representatives"); *id.* at 2279 (same); *id.* at 2256 (explaining that *Dobbs* "is not based on any view about when a State should regard prenatal life as having rights or legally cognizable interests.").

By *Dobbs*' own terms, the RHA must stand. The RHA is landmark state legislation codifying fundamental reproductive rights, de-criminalizing abortion, and reiterating that a fetus is not a person in New York. *See* L. 2019 ch. 1, §§ 2, 5-10. As such, the RHA is inconsistent with any notion of fetal personhood, since

recognizing fetal personhood puts women and pregnant people at risk of criminalization and subordination in exactly the ways the RHA prevents.

### A. The RHA Clarifies and Re-Affirms New York's Longstanding Rejection of Fetal Personhood.

Like the pre-RHA laws it amended, the RHA does not recognize fetal personhood and is inconsistent with that concept. L. 2019 ch. 1, §§ 6, 7. This is evident in the amendments the RHA makes to New York law, and in the parts it retains. Specifically, the RHA de-criminalizes abortion by removing abortion and related text about gestational age from the homicide and related offenses laws. *Id.* at §§ 5-7-a. The RHA moves abortion into the public health code, reinforcing that abortion is healthcare and not a crime. *Id.* at § 2. And the RHA *retains* the pre-RHA definition of "person" in the homicide and related offenses laws to mean only "a human being who has been born and is alive," reiterating New York's rejection of fetal personhood. *Id.* at § 7. Together, these amendments to pre-RHA law highlight and assure that in New York, a fetus is not a person, and an abortion is not a homicide. *Id.* at §§ 2, 5-11.

Pre-RHA law sometimes created confusion because it regulated abortion through the criminal law; at times, this led to prosecutions and pregnancy criminalization based on misapplications of the law that failed to correctly distinguish between pregnancy outcomes and crimes. *See, e.g.*, *People v. Vega*,

170 A.D.3d 1266, 1268, 1272 (N.Y. App. Div. 2019) (using pre-RHA law to

conflate abortion and grisly criminal violence); *People v. Jorgensen*, 41 N.E.3d

778 (N.Y. 2015) (overturning a pregnancy-related manslaughter conviction

because it rested on a misapplication of pre-RHA law); *see also infra* Part III

(discussing *Jorgensen*). The RHA clearly maintains the distinctions these cases

ignore, and provides important guards against pregnancy criminalization that this

Court should respect by rejecting fetal personhood. L. 2019 ch. 1, §§ 2, 5-11.

### B. Recognizing Fetal Personhood Under the U.S. Constitution Would Nullify RHA Reproductive Rights Guarantees in Violation of *Dobbs*.

The RHA guarantees women and pregnant people fundamental reproductive

rights. L. 2019, ch. 1 §§ 1-2. It links those guarantees—rights to abortion, to

choose or refuse contraception and sterilization, or to carry a pregnancy to term, all

without coercion or discrimination—to broader guarantees of equality, privacy,

and health. *Id.*; *see also Lawrence v. Texas*, 539 U.S. 558, 575 (2003) (recognizing

the connection between fundamental rights and equality and privacy). New York

law does not grant fetuses these rights. As discussed in Parts III and IV,

recognizing fetal personhood puts women and pregnant people at risk and

diminishes their federal constitutional rights. *See* Lynn Paltrow, *Constitutional

Rights for the "Unborn" Would Force Women to Forfeit Theirs*, Ms. MAG. (Apr.

15, 2021).[9] Recognizing fetal personhood under the U.S. Constitution would yield similar results as to RHA reproductive rights guarantees, thereby violating *Dobbs'* mandate about deference to state laws on abortion. 142 S. Ct. at 2259, 2279.

### III. Recognizing Fetal Personhood Fuels Pregnancy Criminalization.

Recognizing fetal personhood leads to brutal punishments of women and pregnant people for perceived events and actions relating to their fetuses. Treating fetuses as people leads to laws that target pregnant people, and it distorts laws never intended to apply to pregnant people but that get deployed to single out and criminalize them just because they are or might be pregnant. Pregnancy criminalization occurs regardless of pregnancy outcomes; people are criminally charged whether they have a live birth, stillbirth, miscarriage, or abortion. *See Rise of Pregnancy Criminalization* at 2. People experience pregnancy in the complex social contexts of their lives, and pregnancy criminalization—which punishes people for accidents, mental health crises, and the decisions they make to survive—ignores this and the humanity of women and pregnant people. *See, e.g.*, *McCormack v. Herzog*, 788 F.3d 1017, 1022 n.3 (9th Cir. 2015) (discussing Jennie McCormack's felony criminal abortion charge for taking abortion pills when clinic-based abortion was inaccessible to her); Jessica Robinson, *Idaho Woman*

---

[9]Available at: https://msmagazine.com/2021/04/15/abortion-constitutional-rights-unborn-fetus-14th-amendment-womens-rights-pregnant/

*Arrested for Abortion is Uneasy Case for Both Sides*, NPR (Apr. 9, 2012, 1:46 PM) (same).[10]

The bases for criminalizing pregnant people when fetal personhood is recognized are limited only by prosecutorial imagination—they could include healthcare decisions like taking needed medicines, environmental exposures, foods eaten, or decisions to cross the street. *See, e.g.*, *B.S. v. State*, 966 N.E.2d 619, 622-23, 632 (Ind. Ct. App. 2012) (affirming murder and attempted feticide charges for attempted suicide attempt while pregnant), *overruled on other grounds by Fry v. State*, 990 N.E.2d 429, 451 (Ind. 2013); *People v. Jorgensen*, 41 N.E.3d 778, 781 (N.Y. 2015) (correctly observing that criminalizing pregnancy lacks any limiting principle and could lead to punishments for simple daily activities). And pregnancy criminalization causes lasting harms even if charges are dropped or convictions are overturned. *See* Brief for National Advocates for Pregnant Women, et al. as Amici Curiae Supporting Respondent at 24-25, *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228 (2022) (No. 19-1392).

Pregnancy criminalization is not a hypothetical risk in New York.  For example, New Yorker Jennifer Jorgensen was criminalized for being in a car accident at 34 weeks pregnant. *People v. Jorgensen,* 907 N.Y.S.2d 439, 2010 WL 796830 at * 3-5 (N.Y. Sup. Ct. 2010); *People v. Jorgensen*, 41 N.E.3d 778, 779

---

[10] Available at: https://www.npr.org/templates/story/story.php?storyId=150312812.

(N.Y. 2015). The accident led to an emergency caesarean surgery delivering her daughter Ashley, who tragically died six days later. *Jorgensen*, 41 N.E.3d at 779. Even though the accident happened during her pregnancy, Ms. Jorgensen was charged with criminal child endangerment and second-degree manslaughter for Ashley's death. *Jorgensen,* 907 N.Y.S.2d 439, 2010 WL 796830 at * 4-5; *Jorgensen*, 41 N.E.3d at 780-81. While the charges were not based on fetal personhood—New York law defined "person" only as someone born and alive— they rested on a confused misapplication of pre-RHA law. *Id.*; N.Y. Penal Law § 125.05; L. 2019 ch. 1 § 6; *see also Jorgensen v. County of Suffolk*, 558 F. Supp.3d 51, 64 (E.D.N.Y. 2021) (observing in relation to qualified immunity that Ms. Jorgensen's manslaughter charge was unsupported by New York law).

A trial court dismissed the child endangerment count in the indictment because it reflected a misreading of pre-RHA law. *Jorgensen,* 907 N.Y.S.2d 439, 2010 WL 796830 at * 4-5. The Court of Appeals rejected the misinterpretation of pre-RHA law underlying Ms. Jorgensen's manslaughter charge and overturned her conviction. *See Jorgensen*, 41 N.E.3d at 779-82. Critically, the Court of Appeals correctly and unequivocally rejected the absurdity of using New York law to criminalize people for accidents sustained during their pregnancies:

> Conceivably, one could find it "reckless" for a pregnant woman to disregard her obstetrician's specific orders concerning bed rest; take prescription and/or illicit drugs; shovel a walkway; engage in a contact sport; carry groceries; or disregard dietary restrictions. Such conduct, if it resulted in premature birth

and subsequent death of the child, could result in criminal liability for the mother.

*People v. Jorgensen*, 41 N.E.3d at 781.

While the trial court got it right dismissing the child endangerment count, and the Court of Appeals got it right overturning the manslaughter conviction, Ms. Jorgensen's case shows how earlier decisionmakers got it wrong. These errors highlight that the risk of pregnancy criminalization in New York is real, and that recognizing fetal personhood and subverting the RHA would intensify that risk and make it reality. *See Jorgensen*, 41 N.E.3d at 783, 785-86 (Fahey, J., dissenting) (advancing a misreading of pre-RHA law to dissent from majority's decision to overturn manslaughter conviction).

Though pregnancy criminalization is appropriately unusual in New York, Jennifer Jorgensen's experience is unfortunately not an anomaly.[11] In 2007, Katrina Pierce was charged with second-degree self-abortion under pre-RHA law for taking Tylenol and Motrin in a suicide attempt. *State v. Pierce*, Oswego County Sheriff's Department, Arrest Report No. 07-4625 at 2 (April 9, 2007) (on file with Pregnancy Justice). The arrest report accused Ms. Pierce of trying to kill her "unborn 13 week old baby." *Id.*

---

[11] Pregnancy Justice has documented at least twelve pregnancy criminalization cases in New York, seven of which involved abortion or mention of abortion. *Rise of Pregnancy Criminalization* at 11, 20.

New York does not criminalize drug use or dependence. N.Y. PENAL LAW §
220.21 (McKinney 1985) (criminalizing possession, not use or dependence).
Pregnancy is not an exception to this rule. *Id.* But women in New York have been
punished for simply using drugs based on extra-legal applications of criminal laws.
In 2017, Brittany Updyke was charged with second-degree manslaughter and
endangering a child for allegedly not telling the hospital she took illegal drugs
during pregnancy, even though it was not clear that her newborn would have
survived if she had alerted them. Order Dismissing Indictment No. 2017-74 at 8-9,
14-15, *People v. Updyke*, No. 2017-0085CR (N.Y. Steuben Cnty. Ct. Sept. 21,
2017) (on file with Pregnancy Justice); Jason Jordan, *Hornell Woman Charged in
Baby Overdose Death*, EVENING TRIB. (Apr. 4, 2017, 4:42 PM).[12] New Yorker
Gerda White used controlled substances while she was on probation; only when
she became pregnant did a judge revoke her probation, saying: "[y]ou raised the
stakes when you got pregnant." Samantha House, *Pregnant Woman Jailed to Keep
Her from Using Drugs*, THE CITIZEN (Mar. 16, 2012).[13]

    As the foregoing shows, recognizing fetal personhood by allowing Plaintiff-
Appellants to bring constitutional claims on behalf of fetuses would put women

---

[12]Available at: https://www.eveningtribune.com/story/news/courts/2017/04/04/hornell-woman-charged-in-baby/21598047007/.

[13]Available at: https://auburnpub.com/article_be857c6a-6f14-11e1-9be3-001871e3ce6c.html.

and pregnant people at risk of criminalization. Abundant scholarship establishes that this is especially true for people experiencing pregnancy at the intersection of being poor, Black, or having other marginalized social identities. *See, e.g.*, MICHELE GOODWIN, POLICING THE WOMB: INVISIBLE WOMEN AND THE CRIMINALIZATION OF MOTHERHOOD 11 (2020) [hereinafter POLICING THE WOMB]; *see also* NY Senate Debate on Senate Bill S240, Jan. 22, 2019 at 512 (Senator Krueger, a leading RHA sponsor, stated: "[w]e will never know how many New York women have suffered and even died because of our antiquated laws preventing them from getting the care they desperately needed, particularly low-income women and women of color.").

Critically, charging people with crimes in connection with their pregnancies does not protect them or their fetuses. Jailing women and pregnant people and separating them from their communities and children is a senseless cruelty that does not deter accidents, drug use, or other events leading to pregnancy criminalization. For example, Alabama is the epicenter of pregnancy criminalization and regularly inflicts brutalities on women and pregnant people based on the recognition of fetal personhood, offering a stark example of the hypocrisy and harms of pregnancy criminalization. A lawsuit filed in October 2023 suffices as an illustration. Ashley Caswell was jailed for alleged prenatal drug use under a law that was passed to apply only to children, but which the Alabama

Supreme Court judicially expanded to apply to fetuses. Complaint at 2, 11, *Caswell v. Etowah Cnty.*, No. 4:23-cv-01380-ACA-NAD (N.D. Ala. Oct. 13, 2023); *see Ex parte Ankrom*, 152 So.3d 397, 421 (Ala. 2013) (expanding "child" in a criminal law to include fetus). She was forced to give birth in a jail shower as jail employees ignored her desperate cries for help for over 12 hours. *Id.* Ashley wanted a safe and healthy delivery. Alabama just wanted her in jail.

## IV. Recognizing Fetal Personhood Diminishes the Fundamental Rights of Women and Pregnant People.

Recognizing fetal personhood is inconsistent with full personhood for women and pregnant people. While the right to abortion is no longer protected by the Fourteenth Amendment, women retain robust fundamental rights to bodily autonomy, medical decision-making, and physical liberty; to privacy; to parent; and to freedom from sex-based discrimination. It is not just expressive to call a right fundamental; fundamental rights can be infringed only narrowly and for compelling reasons. *City of Cleburne v. Cleburne Living Center,* 473 U.S. 432, 440 (1985). But where legal fetal personhood exists, women's fundamental rights and the solicitude they demand are wrongly and widely diminished. *See* Lynn Paltrow, *Constitutional Rights for the "Unborn" Would Force Women to Forfeit Theirs*, Ms. Mag. (Apr. 15, 2021) (warning that fetal personhood "fundamentally

change[s] the legal rights and status" of pregnant people and elevates fetal interests above all).[14]

People most impacted by racism and discrimination are also most harmed by the ways fetal personhood undermines fundamental rights. *See* POLICING THE WOMB at 114-128 (observing that "racial disparities dominate all forms of policing in the United States" including policing of pregnancy). Critically, diminishing women's rights to bodily autonomy and medical decision-making compounds the crisis of obstetric racism and racial disparities in maternal mortality and morbidity. *See* Linda Villarosa, *Why America's Black Mothers and Babies Are in a Life-or-Death Crisis*, N.Y. TIMES MAG. (Apr. 11, 2018) (reporting that Black women are three to four times as likely to die from pregnancy-related causes as white women); Dána-Ain Davis, *Obstetric Racism: The Racial Politics of Pregnancy, Labor, and Birthing*, 38 MED. ANTHROPOLOGY 560, 561 (2019) (defining obstetric racism as a framework combining obstetric violence and medical racism to describe the unique violence and discrimination experienced by Black people in relation to pregnancy). These subordinating threats to life and health are exacerbated by the reality that even without fetal personhood, racism and discrimination make fundamental rights guarantees elusive for many people. *See, e.g.*, Dorothy Roberts, *Punishing Drug*

---

[14]Available at: https://msmagazine.com/2021/04/15/abortion-constitutional-rights-unborn-fetus-14th-amendment-womens-rights-pregnant/

*Addicts Who Have Babies: Women of Color, Equality, and the Right of Privacy*,
104 HARV. L. REV. 1419 (1991); Brandon Hasbrouck, *The Antiracist Constitution*,
102 B.U. L. REV 87 (2022) (mapping and critiquing colorblind constitutionalism).

### A. Fetal Personhood Leads to Deprivations of Fundamental Rights to Bodily Autonomy, Physical Liberty, and Medical Decision-Making.

The right to bodily autonomy is fundamental and expressed in many
constitutional guarantees. *See Union Pac. Ry. Co. v. Botsford*, 141 U.S. 250, 251
(1891) (stating that "[n]o right is held more sacred, or is more carefully guarded...
than the right of every individual to the possession and control of his own person,
free from all restraint or interference of others"); *Cruzan v. Dir., Mo. Dep't of
Health*, 497 U.S. 261, 278, 281 (1990) (addressing fundamental right to refuse
medical treatment); *Parham v. J.R.*, 442 U.S. 584, 600 (1979) (acknowledging a
"substantial liberty interest in not being confined unnecessarily for medical
treatment"); *Rochin v. California*, 342 U.S. 165, 210 (1992) (suggesting right to
bodily autonomy). It is well-settled in New York that a competent adult has a
"fundamental common law right," coextensive with liberty interests protected by
the State Constitution, to refuse necessary life-sustaining treatment. *Matter of
Fosmire v. Nicoleau*, 75 N.Y.2d 218, 226 (N.Y. App. Ct. 1990).

Pregnancy is no exception to these rights. But where fetal personhood is
recognized, pregnant people's bodily autonomy and medical-decision-making

rights routinely are diminished by forced and coercive medical interventions. For example, New Yorker Rinat Dray endured an unconsented to caesarean surgery, despite having decisional capacity documented in her medical records, and despite refusing the surgery audibly and clearly countless times. *Dray v. Staten Island Univ. Hosp.*, 75 N.Y.S.3d 59, 61-64 (N.Y. App. Div. 2018). The doctor lacerated her bladder during surgery. *Id.* at 62. It was entirely reasonable for Ms. Dray to choose vaginal birth over surgery; caesareans are often riskier than vaginal deliveries and are associated with long-term adverse outcomes. F. GARY CUNNINGHAM ET AL., WILLIAMS OBSTETRICS 548 (26th ed. 2022).

In a wrongly decided New York case, a court ordered a blood transfusion over the religious refusal of a person who was 18 weeks pregnant. *In re Jamaica Hosp.*, 491 N.Y.S.2d 898, 898-99 (N.Y. Sup. Ct. 1985). The *Jamaica* court's foundational legal finding was wrong, since New York law does not—and did not—recognize fetal personhood. *Id.*; *see*, *e.g.,* N.Y. Penal Law §§ 125.00, 125.05 (defining person as only someone born and alive). But if this Court recognizes fetal personhood under the U.S. Constitution, forced medical treatment will proliferate to the grave detriment of women and pregnant people.

In Florida, a hospital got a court order forcing pregnant Samantha Burton to stay on hospital bedrest away from her two children and against her wishes. POLICING THE WOMB at 82. The order evoked fetal personhood, stating "as

between parent and child, the ultimate welfare of the child is the controlling factor." *Id.* (quoting *Burton v. State*, 49 So. 3d 263, 265 (Fla. Dist. Ct. App. 2010)). The order empowered the hospital to "take any action" to protect the fetus, including "restricting Samantha Burton to bed rest, administering appropriate medication, postponing labor, taking appropriate steps to prevent and/or treat infection, and/or eventually performing a caesarean section delivery..." *Id.* at 82-83 (quoting *Unborn Child of Samantha Burton*, No. 2009 CA 1167, 2009 WL 8628562 at *1 (Fla. Cir. Ct. Mar. 27, 2009)).

Pregnant people have a fundamental right to physical liberty. *See Foucha v. Louisiana*, 504 U.S. 71, 80, 86 (1992). This right can be infringed only for compelling reasons and in narrow ways. *See City of Cleburne*, 473 U.S. at 440; *Glucksberg*, 521 U.S. at 721. But where fetal personhood is recognized, that command is wrongly ignored and pregnant people have been civilly committed— *i.e.*, physically detained against their will or under threat of punishment—for fetal protection.

In 2006, a New York court committed a pregnant person to a mental hospital for a minimum of six months—the apparent remainder of her pregnancy— claiming she was a danger to herself and her fetus. *Matter of Perra*, 827 N.Y.S.2d 587, 588, 590, 593 (Sup. Ct. 2006). The court ordered her to stop smoking

cigarettes and to stay in the mental hospital, saying she was otherwise unable to "fulfill the role of a normal functioning mother[.]" *Id.* at 592-93.

In Wisconsin, pregnant Tamara Loertscher was civilly detained after telling a healthcare provider she had used methamphetamine. *Loertscher v. Anderson*, 259 F. Supp. 3d 902, 909-10 (W.D. Wis. 2017), *vacated*, 893 F.3d 386 (7th Cir. 2018). Ms. Loertscher's fetus was appointed an attorney as a guardian *ad litem* but Ms. Loertscher was not provided counsel. *Id.* at 910-12. Ms. Loertscher spent eighteen days in jail, which included solitary confinement, for declining court-ordered drug treatment. *Id.* at 912. While jailed, she was denied prenatal care. *Id.* Similar civil commitments have happened to other women. *See* Application for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 by a Person in Custody, *Beltran v. Loenish*, 2:13-cv-01101 (E.D. Wis. Sept. 30, 2013); *see also* David Steinkraus, *Pregnant and Addicted—Hooked on OxyContin, Woman Remains Confined as She Seeks Help for Herself, Her Unborn Baby*, J. TIMES (May 12, 2005).[15]

---

[15]Available at: https://journaltimes.com/news/local/pregnant-and-addicted-hooked-on-oxycontin-woman-remains-confined-as/article_d302a479-2a58-5416-baec-0b6cef070fae.html?mode=comments.

**B. Fetal Personhood Leads to Deprivations of Fundamental Fourth and Fourteenth Amendment Rights to Bodily and Familial Privacy.**

Fetal personhood can be invoked to wrongly diminish two additional fundamental rights: freedom from unreasonable searches and seizures, and the right to parent. *See Ferguson v. City of Charleston*, 532 U.S. 67, 78, 82-86 (2001) (observing perinatal patients have "substantial" Fourth Amendment privacy interests and declining to extend special needs exception to perinatal drug tests that have a law enforcement purpose); *Meyer v. Nebraska*, 262 U.S. 390, 400-402 (1923) (recognizing a Fourteenth Amendment right to parent).

Prenatal drug tests leading to discriminatory treatment and child welfare investigations already routinely happen in New York hospitals. Movement for Family Power et al., *How the Foster System Has Become Ground Zero for the U.S. Drug War* 55, 63, 67 (2020).[16] This is especially true for people who are highly surveilled and policed because of racism and poverty. *See id.; see also* DOROTHY ROBERTS, SHATTERED BONDS: THE COLOR OF CHILD WELFARE (2002) (explaining that child welfare "systematically demolish[es]" Black families).

If this Court recognizes fetal personhood, drug testing during the perinatal period would become an even more prevalent practice and would generate more child welfare investigations, and also criminalization. For example, in *Whitner v.*

---

[16]Available at: https://www.movementforfamilypower.org/ground-zero.

*State,* the South Carolina Supreme Court invoked fetal personhood to uphold a mother's criminal conviction for prenatal drug use saying that "child" in state law must include "fetus" because "prevention of children's problems" resulting from "abuse or neglect . . . suffered by [a] viable fetus before birth" was a priority. 492 S.E.2d 777, 780-81 (S.C. Sup. Ct. 1997); *see also* Amy Yurkanin, *How One Alabama County Declared War on Pregnant Women Who Use Drugs*, MARSHALL PROJECT (July 26, 2023) (reporting on widespread practice of jailing pregnant people in Etowah County, Alabama for alleged prenatal substance use).[17] Recognizing fetal personhood also could make drug tests of parents vulnerable to escaping appropriately robust Fourth Amendment strictures. *But cf. Ferguson v. City of Charleston*, 532 U.S. 67, 84-85 (2001) (concluding Fourth Amendment strictures should apply to drug tests of perinatal patients conducted for a law enforcement purpose).

### C. Fetal Personhood Results in Unconstitutional Sex-Based Discrimination.

Recognizing fetal personhood leads to disparate treatment based on sex that violates state and federal laws and the U.S. Constitution. The unequal treatment described above—criminalization, forced medical interventions, civil detentions,

---

[17] Available at: https://www.themarshallproject.org/2023/07/26/alabama-pregnant-women-drugs.

searches, and other punishments for drug use or accidents—would not happen but for sex.

Discrimination based on pregnancy is discrimination based on sex under New York Human Rights Law. In New York, "distinctions based solely upon a woman's pregnant condition constitute sexual discrimination." *See Elaine W. v. Joint Diseases N. Gen. Hosp., Inc.*, 81 N.Y.2d 211, 216 (1993); *see also* N.Y. Exec. Law §§ 296(2)(a). Federal law also treats pregnancy discrimination as sex discrimination. *See* Pregnancy Discrimination Act ("PDA"), Pub. L. No. 95-555, 92 Stat. 2076 (1978) (amending Title VII of the Civil Rights Act of 1964 to recognize pregnancy discrimination as a form of sex discrimination).[18]

Bedrock equality jurisprudence rejects different treatment based on sex and sex stereotypes. *United States v. Virginia,* 518 U.S. 515, 532-34 (1996); *Reed v. Reed,* 404 U.S. 71, 76 (1971); *Frontiero v. Richardson*, 411 U.S. 677, 684-91 (1971) (plurality opinion); *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 117 (2d Cir. 2003). Unequal treatment of women consistently reflects sex stereotypes linked to motherhood. *See id.; see also Bradwell v. Illinois*, 83 U.S. 130, 141 (1873) (upholding state denial of law license to women in a decision where three members of the Court said "[t]he paramount destiny and mission of

---

[18] Discrimination based on sex and pregnancy can include different types of sex-based discrimination, including based on sexual orientation and gender identity. *See Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1737 (2020).

woman are to fulfil the noble and benign offices of wife and mother") (Bradley, J., joined by Swayne and Field, JJ., concurring in judgment); *Muller v. Oregon*, 208 U.S. 412, 421-22 (1908) (drawing on sex stereotypes to uphold a law limiting the hours women could work); *Int'l Union v. Johnson Controls, Inc.,* 499 U.S. 187, 211 (1991) (acknowledging stereotypes about motherhood are sex-based); *Cal. Fed. Sav. & Loan Ass'n v. Guerra*, 479 U.S. 272, 289-90 (1987) (recognizing that "archaic or stereotypic notions about pregnancy and the abilities of pregnant workers" often are reflected in laws impacting pregnant people).

U.S. Supreme Court precedents also support a conclusion that discrimination based on pregnancy can be unconstitutional discrimination based on sex. *See United States v. Virginia,* 518 U.S. 515, 534 (1996); *Nevada Department of Human Services v. Hibbs*, 538 U.S. 721, 730 (2003); *see also Geduldig v. Aiello*, 417 U.S. 484, 496 n.20 (1974) (concluding exclusion of pregnant people from a state benefit plan did not violate the Fourteenth Amendment but acknowledging that discrimination based on pregnancy could be sex-based). *See also* Reva B. Siegel, *The Pregnant Citizen, from Suffrage to the Present*, 19TH AMENDMENT SPECIAL EDITION GEO. L.J. 167, 189-211 (2020) (explaining that pregnancy regulations are sex-based and explaining *Geduldig's* status after *Virginia* and *Hibbs*). [19]

---

[19] *See* Brief of Equal Protection Constitutional Law Scholars as Amici Curiae Supporting Respondents, *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228 (2022) (No. 19-1392) at 7-11.

Importantly, sex stereotypes about parenthood and motherhood are highly racialized. As scholars have amply demonstrated, sex stereotypes about white mothers or parents, Black mothers or parents, Native mothers or parents, and parents of all other social identities, track stereotypes about those identities as they relate to fertility and parenthood. *See generally* DOROTHY ROBERTS, KILLING THE BLACK BODY 10 (2d ed. 2017) (discussing racist stereotypes associated with Black women and mothers, in contrast to the "ideal white mother"); *see* LORETTA J. ROSS & RICKIE SOLINGER, REPRODUCTIVE JUSTICE: AN INTRODUCTION 50-52 (2017) (contrasting high rates of coercive sterilization of Black, Native, Mexican, and Puerto Rican women with policies discouraging sterilization of white women during the same period, and theorizing that the disparity reflects racialized stereotypes about valuable motherhood). Criminalizing pregnancy and subordinating women and pregnant people consistently reflects, entrenches, and weaponizes stereotypes that have no place in the law—namely, that a "good" mother renounces herself to pregnancy and is blameworthy if she is perceived as living any other way, and that race corresponds to capacity to mother. *See* Dorothy Roberts, *Punishing Drug Addicts Who Have Babies: Women of Color, Equality, and the Right of Privacy*, 104 HARV. L. REV. 1419 (1991).

New Yorker Crystal H.'s horrific experience of being singled out for drug testing in a New York hospital just because she was pregnant is an example of the

discriminatory subordination *amici* describe. Compl. at ¶¶ 1-4, 10-13, *Crystal v. Garnet Health Medical Center*, filed before the New York State Division of Human Rights (Dec. 17, 2021).[20] Crystal was drug tested without knowledge or consent while in the hospital to give birth to her son. *Id.* at ¶¶ 2-3, 11-13. The result came back positive for opiates because she had eaten a poppyseed bagel hours before birth, which can cause a false positive drug test. *Id.* at ¶¶ 14, 18, 21, 22. She told the hospital she had eaten the bagel and did not use opiates; but they made her wait 48 hours for a second test, which was negative. *Id.* at ¶¶ 18, 20, 22. Her newborn son tested negative too. *Id.* at ¶¶ 28-30. But because of the first positive test, hospital staff treated Crystal badly and denied her critical early breastfeeding and lactation support. *Id.* at ¶¶ 20, 23-25, 31-39. Adding injury to her hospital experience, Crystal and her family endured a dangerous, intrusive, and baseless child abuse investigation: during the COVID-19 pandemic, her home was searched within 12 hours of leaving the hospital after giving birth. *Id.* at ¶¶ 40-53.

Crystal filed a sex discrimination complaint with the New York State Division of Human Rights, which investigated the allegations and concluded probable cause exists to believe the hospital's drug testing practice is unlawful under state human rights law. *See* N.Y. State Div. of Human Rights, Determination

---

[20]Available at:
https://www.nyclu.org/sites/default/files/field_documents/nyclu_dhr_complaint_2021.pdf.

After Investigation Letter (October 20, 2022) (on file with the Clinic). Crystal would not have been drug tested, denied needed medical services, or investigated by child welfare but for her pregnancy and her sex. If this Court recognizes fetal personhood under the U.S. Constitution, disparate treatment of the sort *amici* describe in this proposed brief—and that Crystal experienced—will proliferate, will involve pregnancy criminalization, and will threaten the lives and rights of all women and pregnant people.

## CONCLUSION

For the foregoing reasons, *amici* respectfully urge this Court to reject fetal personhood by affirming the denials of Plaintiff-Appellants' constitutional claims on behalf of fetuses. Any other result would conflict with the RHA, fuel pregnancy criminalization, and wrongly diminish the fundamental rights of women and pregnant people.

Dated:   New York, New York
         November 6, 2023

/s/Sarah Samuels Wheeler
Sarah Samuels Wheeler
Reproductive Justice Clinic
NYU School of Law[21]
245 Sullivan Street, 509
New York, NY 10012
203-253-6399
sarah.wheeler@nyu.edu

/s/Dana Sussman
Dana Sussman
Pregnancy Justice
575 8th Avenue Suite 700
New York, NY 10018
646-854-1454
dana.s@pregnancyjusticeus.org

*Counsel for Proposed Amici Curiae*

---

[21] This brief has been prepared by the Reproductive Justice Clinic, which is operated under the umbrella organization of Washington Square Legal Services, Inc., a not-for-profit corporation affiliated with New York University School of Law.  The brief does not purport to present the school's institutional views, if any.

# CERTIFICATE OF COMPLIANCE

This brief complies with the word limit of Fed. R. App. P. 29(a)(5) and Local Rule 29.1(c) because, excluding the portions of the document exempted by Fed. R. App. P. 32(f), this brief contains 6,631 words. This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in a 14-point Times New Roman font.

Dated:   New York, New York
         November 6, 2023

/s/Sarah Samuels Wheeler
Sarah Samuels Wheeler
Reproductive Justice Clinic
NYU School of Law
245 Sullivan Street, 509
New York, NY 10012
203-253-6399
sarah.wheeler@nyu.edu

/s/Dana Sussman
Dana Sussman
Pregnancy Justice
575 8th Avenue Suite 700
New York, NY 10018
646-854-1454
dana.s@pregnancyjusticeus.org

*Counsel for Proposed Amici Curiae*