# United States Court of Appeals
# For the Second Circuit

---

August Term 2023

Argued:  March 1, 2024
Decided: June 3, 2025

No. 23-686

---

MARY DOE,

*Plaintiff-Appellant*,

JANE SMITH, JILL PARK, ANN JONES, DR. AMY MOE,

*Plaintiffs*,

*v.*

KATHY HOCHUL, as Governor of the State of New York
in her official capacity, LETITIA JAMES, as Attorney
General of the State of New York in her official capacity,
STEPHANIE SCHULMAN, Deputy Director, Division of
Hospitals and Diagnostic and Treatment Centers, New
York State Department of Health in her official capacity,
ARTHUR S. HENGERER, M.D., Chair, New York State
Department of Health Office of Professional Medical
Conduct in his official capacity, HOWARD A. ZUCKER,
M.D., J.D., SARAH BENSON, Deputy Commissioner, New
York State Education Department's Office of the
Professions in her official capacity, DONNA FRESCATORE,
New York Medicaid Director in her official capacity,
SHEILA J. POOLE, Commissioner of the New York State

Office of Children and Family Services (OCFS) in her
official capacity,

*Defendants-Appellees*.[*]

---

Appeal from the United States District Court
for the Northern District of New York
No. 21-cv-35, Lawrence E. Kahn, *Judge*.

---

Before:     LIVINGSTON, *Chief Judge*, SULLIVAN, and MENASHI, *Circuit
Judges*.

Mary Doe, a social worker proceeding by pseudonym, appeals from a
judgment dismissing her constitutional challenges to New York's Reproductive
Health Act ("RHA") for lack of standing; she also appeals the district court's denial
of her post-judgment motions to amend the complaint. Doe raises two challenges
on appeal. First, she argues that the district court erred in denying her motion to
be appointed "next friend" to a class of viable fetuses in order to bring a
constitutional challenge to the RHA on their behalf. According to Doe, the district
court committed legal error in requiring her to demonstrate a "significant
relationship" to the viable fetuses in the class, which Doe maintains is not a
prerequisite to next friend representation under Federal Rule of Civil Procedure
17(c). Second, Doe argues that the district court erred in denying her post-
judgment motion to file an amended complaint, which the district court found
would be futile for lack of standing. Doe disputes the district court's ruling on
standing, arguing that the proposed amended complaint asserted claims on behalf
of a viable fetus, "Baby Nicholas," who had been cognizably harmed by the RHA.

With respect to Doe's motion to be appointed next friend, we agree with
Doe that the district court erred in requiring a "significant relationship" for next
friend appointments. Nevertheless, we affirm the dismissal of Doe's claims on
another ground – namely, that she failed to identify or otherwise describe any class
member in the viable fetus class that she sought to represent. Without describing

---

[*] The Clerk of Court is respectfully directed to amend the case caption.

at least one class member and the injury he faces, Doe necessarily cannot meet her burden of plausibly establishing a live case or controversy under Article III.  We likewise affirm the district court's denial of Doe's motion to amend, which turned on the conclusion that Baby Nicholas lacks standing to challenge the RHA.  Even if the RHA exposed Baby Nicholas to a generalized risk of abortion or third-party violence, he will have standing only if he plausibly faces an injury that is imminent and traceable to the RHA.  Here, the only potential near-term risk alleged in the proposed amended complaint – that Baby Nicholas's mother's former partner will attack her and harm him – is not traceable to the RHA, since nothing plausibly indicates that the RHA will cause the former partner to engage in such behavior.  Accordingly, we **AFFIRM** the judgment of the district court.

AFFIRMED.

> TERESA S. COLLETT, Eagan, MN (Christen E. Civiletto, East Amherst, NY, *on the brief*), *for Plaintiff-Appellant.*
>
> LAURA ETLINGER, Assistant Solicitor General (Barbara D. Underwood, Solicitor General, Galen Leigh Sherwin, Special Counsel for Reproductive Justice, Jeffrey W. Lang, Deputy Solicitor General, *on the brief*), *for* Letitia James, Attorney General of the State of New York, Albany, NY, *for Defendants-Appellees.*
>
> Sarah Wheeler, Adjunct Professor of Clinical Law, New York University School of Law, New York, NY, *for Amicus Curiae New York University School of Law Reproductive Justice Clinic in support of Defendants-Appellees.*
>
> Dana Sussman, Deputy Executive Director, Pregnancy Justice, New York, NY, *for Amicus Curiae Pregnancy Justice in support of Defendants-Appellees.*

3

RICHARD J. SULLIVAN, *Circuit Judge*:

Six years ago, New York enacted the Reproductive Health Act ("RHA"), which decriminalized all abortions and eliminated the criminal offense of fetal homicide. In response to that legislation, a group of plaintiffs brought this lawsuit, alleging that the RHA violated the constitutional rights of various expectant mothers, doctors, social workers, and fetuses. After the district court dismissed those claims for either lack of standing or failure to state a claim, the plaintiffs sought to vacate that judgment so they could file an amended complaint. While that post-judgment motion was pending, the Supreme Court decided *Dobbs v. Jackson Women's Health Organization*, 597 U.S. 215 (2022), which declared that the federal constitution does not protect the right to abortion. The plaintiffs then filed another round of post-judgment motions, seeking vacatur in light of *Dobbs* and repeating their request for leave to amend. The district court denied those motions as well, concluding that neither *Dobbs* nor their proposed amended complaint would remedy the defects in the original complaint.

One of the plaintiffs, a social worker using the pseudonym Mary Doe, filed this appeal challenging two of the district court's rulings. First, she argues that the district court erred in denying her motion to be appointed "next friend" to a class

4

of viable fetuses in order to bring a constitutional challenge to the RHA on their behalf. According to Doe, the district court committed legal error in requiring her to demonstrate a "significant relationship" to the viable fetuses in the class, which Doe maintains is not a prerequisite to next friend representation under Federal Rule of Civil Procedure 17(c). Second, Doe argues that the district court erred in denying her post-judgment motions on the grounds that her proposed amended complaint would fail for lack of standing. That was error, Doe asserts, because her proposed amended complaint identified a viable fetus, "Baby Nicholas," who has standing to challenge the RHA.

Although we agree with Doe that the district court erred in requiring a "significant relationship" for next friend appointments, we affirm the dismissal of Doe's claims on another ground: that she failed to identify or otherwise describe any class member in the viable fetus class that she sought to represent. Without describing at least one class member and the injury he faces, Doe necessarily cannot meet her burden of plausibly establishing a live case or controversy under Article III.

With respect to Doe's motion to amend, we likewise affirm the district court's conclusion that Baby Nicholas lacks standing to challenge the RHA. Even

5

if the RHA exposed Baby Nicholas to a generalized risk of abortion or third-party violence, he will have standing only if he plausibly faces an injury that is imminent and traceable to the RHA. But the only near-term risk alleged in the proposed amended complaint – that Baby Nicholas's mother's former partner will attack her and harm him – is not traceable to the RHA, since nothing plausibly indicates that the RHA will cause the former partner to engage in such behavior. Accordingly, we **AFFIRM** the judgment of the district court.

**BACKGROUND**

## I.    Facts

In 2019, the New York legislature overhauled the state's abortion laws by enacting the Reproductive Health Act ("RHA"), 2019 N.Y. Sess. Laws Ch. 1, §§ 1–14 (S. 240) (McKinney). This legislation made two relevant changes. *First*, the RHA fully decriminalized abortion. Prior to the RHA's passage, it was a crime to perform an abortion – on another or to oneself – after twenty-four weeks of gestation unless doing so was necessary to save the life of the mother. The RHA removed those offenses from New York's penal laws. *See* RHA §§ 5, 7-a to 10. In their place, the RHA added Article 25-A of the Public Health Law, which permits licensed health care practitioners to perform abortions within twenty-four weeks

6

of gestation or after twenty-four weeks if the fetus is not viable or the mother's life or health is at risk. *See id.* § 2 (codified at N.Y. Pub. Health Law § 2599-bb (2024)).

*Second*, the RHA eliminated the crime of fetal homicide from the state's criminal laws. *See id.* § 6 (amending N.Y. Penal Law § 125.00 to remove the provisions covering fetal homicide). Under the pre-RHA regime, the offense of homicide included causing the death of a fetus after twenty-four weeks of gestation. *See* N.Y. Penal Law § 125.00 (2018). The RHA removed that provision from the homicide statute, which means it is no longer homicide to cause the death of a fetus of any gestational age.

## II. Procedural History

### A. The Original Complaint

In 2021, a group of plaintiffs filed suit challenging the RHA, alleging that it violated the constitutional rights of various expectant mothers, doctors, social workers, and fetuses. Most relevant to this appeal, a social worker using the pseudonym Mary Doe sought to challenge the RHA's decriminalization of abortion and repeal of fetal homicide on behalf of a class of viable fetuses in New York (the "Viable Fetus Class"). According to Doe, these provisions of the RHA violated the fetuses' rights to life and equal protection under the Fourteenth Amendment, as well as their rights to legal redress under the First Amendment.

7

Doe sought both damages and equitable relief on her claims, including a declaration that the RHA is unconstitutional and an injunction barring Defendants – various state officials in New York – from enforcing its provisions.

Because Doe was not herself among the class of fetuses, she also moved to be appointed as "next friend" to the class under Federal Rule of Civil Procedure 17(c)(2). Although Doe alleged that she was a social worker who had worked with pregnant mothers for over two decades, she did not identify or describe any specific fetus in the putative class, and did not name or otherwise identify a class representative to serve as the named plaintiff for the class under Federal Rule of Civil Procedure 23.

Defendants opposed Doe's appointment as next friend and moved to dismiss the complaint. With respect to the former, Defendants argued that Doe was ineligible to serve as next friend because she lacked a significant relationship with the fetus class and because Rule 17 does not allow next friends to represent fetuses. Several months later, in August 2021, the district court denied Doe's next friend motion. Although it did not take a position on whether Rule 17 permitted representation of a fetus, the district court agreed with Defendants that a next friend must demonstrate a "significant relationship" with the minor or

incompetent party she seeks to represent. App'x at 92. Because Doe had not shown such a relationship with the fetuses in the class, the district court declined to appoint her as a next friend. Shortly thereafter, the district court also granted Defendants' motion to dismiss Doe's claims for lack of standing, concluding that she could not have standing because her next friend appointment had been denied.[1] The district court entered judgment for Defendants on October 26, 2021.

## B. The Post-*Dobbs* Complaint

Less than a month later, the plaintiffs filed a post-judgment motion seeking to reopen the judgment and file an amended complaint. This time, the proposed amended complaint identified a specific fetus – Baby Nicholas – as the class representative for the Viable Fetus Class and proposed his natural mother and grandmother, Rachel Brown-Lee and Miriam Brown (both pseudonyms), as next friends.

While that motion was pending, the Supreme Court decided *Dobbs*, which held that there is no federal constitutional right to abortion. The plaintiffs then requested permission to revise their post-judgment motion and to update their

---

[1] Although not relevant here, the district court also dismissed the claims brought by the other plaintiffs against the RHA, either for lack of standing or for failure to state a claim. These other plaintiffs do not appeal the dismissal of those claims.

proposed amended complaint in light of *Dobbs*. After that leave was granted, the plaintiffs filed a second round of post-judgment motions under Federal Rules of Civil Procedure 59(e), 60(b)(1), and 60(b)(6), accompanied by a post-*Dobbs* proposed amended complaint (the "post-*Dobbs* complaint"). As relevant here, these motions argued that the judgment should be set aside because (1) *Dobbs* was an intervening change in controlling law or otherwise extraordinary circumstance justifying post-judgment relief, and (2) the plaintiffs had not received an opportunity to amend their original complaint under Federal Rule of Civil Procedure 15. Like the previously proposed amended complaint, the post-*Dobbs* complaint identified Baby Nicholas as class representative for the Viable Fetus Class and proposed Brown-Lee and Brown as his next friends. It also alleged that Brown-Lee's former partner had violently assaulted her when she was pregnant in 2017 and 2018 and had verbally and physically abused her as recently as 2019. According to Brown-Lee, she obtained an order of protection against her former partner that runs through 2027, but he violated that order and continued "to act in a threatening and emotionally abusive way towards [her]." App'x at 118.

The district court denied the post-judgment motions in March 2023. The district court explained that *Dobbs* did not warrant post-judgment relief, since the

Viable Fetus Class's claims were dismissed for lack of standing, which was not impacted by *Dobbs*. The district court also concluded that amendment would be futile, since the post-*Dobbs* complaint did not plausibly establish that Baby Nicholas had standing.

Doe then filed this appeal, challenging two of the district court's decisions: (1) the denial of Doe's motion to be appointed next friend, and (2) the denial of her post-judgment motions to vacate the judgment and allow filing of the post-*Dobbs* complaint.

## DISCUSSION

We review a district court's denial of a motion to serve as next friend under Rule 17(c) for abuse of discretion. *See Ferrelli v. River Manor Health Ctr.*, 323 F.3d 196, 200 (2d Cir. 2003). "The existence of standing is a question of law that we review *de novo*." *Shain v. Ellison*, 356 F.3d 211, 214 (2d Cir. 2004). Because we "have an independent obligation" to confirm our jurisdiction, "we must always address questions of standing, even when neither the parties nor the court below have considered the issue." *Hu v. City of New York*, 927 F.3d 81, 89 (2d Cir. 2019) (internal quotation marks omitted). We also review *de novo* the denial of a post-judgment

motion for leave to replead on the ground that amendment would be futile. *See Metzler Inv. GmbH v. Chipotle Mexican Grill, Inc.*, 970 F.3d 133, 145 (2d Cir. 2020).

## I.   Dismissal of Doe's Claims for Lack of Standing

We first take up the district court's dismissal of Doe's claims challenging the constitutionality of the RHA, which she sought to bring as next friend to the Viable Fetus Class.  According to the district court, Doe was categorically ineligible to serve as next friend under Rule 17(c) because she lacked a "significant relationship" to the Viable Fetus Class.  App'x at 92.  We disagree with that conclusion, but nevertheless affirm the dismissal of Doe's claims because she failed to provide an adequate description of any fetus in the class and therefore lacks Article III standing to bring their claims in a representative capacity.

### A.   Next Friend Appointment

Article III imposes several limits on our jurisdiction.  Chief among them is the requirement that the plaintiff "have standing to sue." *Raines v. Byrd*, 521 U.S. 811, 818 (1997).  Typically, a plaintiff will have standing only to "assert his or her own legal rights and interests" and may not "rest a claim to relief on the legal rights or interests" of others. *Powers v. Ohio*, 499 U.S. 400, 410 (1991).  This limitation ensures that there is a live case or controversy between two parties that each have a personal stake in the dispute.  In this way, Article III prevents

12

"concerned bystanders" from abusing the federal courts as a forum to air their "generalized grievances" against state actions. *Hollingsworth v. Perry*, 570 U.S. 693, 707, 715 (2013) (internal quotation marks omitted).

Even so, we have long acknowledged several narrow exceptions under which a plaintiff may invoke the injuries of a third party to establish standing. Most relevant here, courts have exercised the authority to appoint a "next friend" who may bring claims on behalf of a minor or other incompetent person. *See Whitmore v. Arkansas*, 495 U.S. 149, 161–62 (1990). Because these parties lack the legal capacity to sue, the only way to vindicate their rights is to permit another to prosecute their claims in a representative capacity. Normally, that duty would fall on the minor or incompetent party's legal guardian. *See, e.g., McCormick ex rel. McCormick v. Sch. Dist. of Mamaroneck*, 370 F.3d 275, 279 (2d Cir. 2004) (parents bringing Title IX challenge to school district's athletic policy on behalf of minor daughters). But there may be instances where the legal guardian "is unable, unwilling . . . [,] or has interests which conflict with those of the [minor] or incompetent." *Ad Hoc Comm. of Concerned Tchrs. v. Greenburgh # 11 Union Free Sch. Dist.*, 873 F.2d 25, 29 (2d Cir. 1989) ("*Ad Hoc Comm.*"). In those scenarios, Rule 17(c)

authorizes district courts to appoint a "next friend" to bring the minor or incompetent party's claims in court:

> The following representatives may sue or defend on behalf of a minor or an incompetent person: (A) a general guardian; (B) a committee; (C) a conservator; or (D) a like fiduciary. . . . A minor or an incompetent person who does not have a duly appointed representative may sue by a next friend or by a guardian ad litem.

Fed. R. Civ. P. 17(c).

This does not mean, of course, that just anyone may assume the mantle of next friend. As the Supreme Court has explained, there are "at least two firmly rooted prerequisites for 'next friend' standing." *Whitmore*, 495 U.S. at 163. "First, a 'next friend' must provide an adequate explanation – such as inaccessibility, mental incompetence, or other disability – why the real party in interest cannot appear on his own behalf to prosecute the action." *Id.* "Second, the 'next friend' must be truly dedicated to the best interests of the person on whose behalf he seeks to litigate." *Id.*

Here, the district court denied Doe's next friend application based on a third requirement: that a next friend must have a "significant relationship" to the real party in interest. App'x at 92. The district court observed that although Doe alleged that she was otherwise qualified to serve as next friend to the Viable Fetus

14

Class, she did not assert that she had a relationship with any of the class members. *Id.* at 30–32 (alleging that the class members are "adverse" to their legal guardians who might wish to obtain abortions and that Doe is qualified and able to represent their best interests).[2]  On appeal, Doe challenges the denial of her next friend motion, arguing that the district court made a legal error in requiring a significant relationship before a next friend may be appointed under Rule 17(c).

We agree with Doe.  Although a significant relationship with the real party in interest is *relevant* to the appointment of a next friend, it is neither required nor dispositive.  For starters, the text of Rule 17(c) does not demand any sort of "relationship," let alone a significant one.  It provides simply that "[a] minor or an incompetent person who does not have a duly appointed representative may sue by a next friend or by a guardian ad litem."  Fed. R. Civ. P. 17(c)(2).  And as we have observed, "[t]he term 'next friend' is broad enough to include any[]one who has an interest in the welfare of an infant who may have a grievance or a cause of action."  *Ad Hoc Comm.*, 873 F.2d at 31 (alterations accepted and internal quotation

---

[2] The district court did not scrutinize whether these allegations met the other requirements of next friend standing under Rule 17(c) – including that the legal guardian be conflicted and that the next friend be "truly dedicated" to the incompetent person's interests – and we take no position on those issues here.  *See Ad Hoc Comm.*, 873 F.2d at 29; *Whitmore*, 495 U.S. at 163.

marks omitted).  Put simply, there is no textual hook for the "significant relationship" requirement that the district court imposed here.

Our own precedent, moreover, establishes that we do not always require a particularly close relationship between the next friend and the real party in interest.  In one of our (admittedly few) cases on the issue, we held that a committee of teachers could sue as next friend to a group of students who wished to challenge a school's hiring practices – even though the teachers lacked any familial or longstanding relationship to the students.  *See id.* at 29.  As we explained, the committee was eligible to serve as next friend because some teachers were "intimately involved with the [c]hildren's education," the committee "instituted th[e] suit in good faith," and no other adults were better "position[ed]" to bring the students' claims.  *Id.* at 30; *see also id.* at 27 (explaining that the students were minors who were under New York City's custody and/or guardianship, and that it was unlikely that the City would bring a claim challenging its own school policies on their behalf).  Although we did not say so explicitly, our reasoning clearly embodied a case-by-case rule in which a significant relationship is not categorically required.  *See id.* at 31 (describing how "the facts and circumstances of each case will vary").

16

Other circuits have settled on a similarly flexible standard. The D.C. Circuit has explained that while there "ordinarily [must] be a significant relationship between the proposed next friend and minor, . . . that requirement may not rigidly apply when a minor has no significant relationships." *Muthana v. Pompeo*, 985 F.3d 893, 902 (D.C. Cir. 2021). The Ninth Circuit has likewise adopted an "elastic" rule in which a significant relationship is not required when the real parties lack any "relative" or "friend" that can "act on their behalf." *Coal. of Clergy, Laws., & Professors v. Bush*, 310 F.3d 1153, 1162 (9th Cir. 2002) (stating that another person with "some relationship" could serve as next friend in such a case, since this relationship would at least be "'significant' in comparison to the [real party's] other relationships"). The Fourth Circuit, in ostensibly adopting a significant-relationship requirement, explicitly declined to address the situation "of someone who possesses no significant relationships at all." *Hamdi v. Rumsfeld*, 294 F.3d 598, 604 n.3 (4th Cir. 2002). And in a notable First Circuit case involving a challenge to a state foster care system, that court held that a doctor could serve as next friend to a group of foster children whom he had never met and whose "family court and medical files" he had never reviewed. *Sam M. ex rel. Elliot v. Carcieri*, 608 F.3d 77, 93 (1st Cir. 2010). Stressing that this deficiency did not "automatically

17

disqualif[y]" the doctor from serving as next friend, the court concluded that his appointment was appropriate because there was no evidence that he was "pursuing the present suit for reasons other than a genuine concern for the children's well-being." *Id.*

We see no reason to depart from the flexible rule – that a significant relationship is not always required – announced in these well-reasoned decisions. Indeed, the Supreme Court stopped short of adopting a "significant relationship" requirement in *Whitmore*. *See Whitmore*, 495 U.S. at 163–64 (noting it has been "suggested" by lower courts "that a 'next friend' must have some significant relationship with the real party in interest," but declining to identify this as a "firmly rooted prerequisite[]"). A contrary rule could preclude some real parties in interest from bringing suit altogether, simply because they lack a relationship significant enough to justify appointment of a representative.

We therefore hold that, in certain cases, a next friend who lacks a significant relationship to the real party in interest may be appointed under Rule 17(c). Rather than apply a rigid rule, district courts should examine the purported relationship between the next friend and the real party in interest to determine whether the next friend appears "truly dedicated to the best interests of the person on whose

behalf he seeks to litigate." *Id.* at 163. While there "ordinarily" should be a significant relationship, that requirement is relaxed when the real party lacks any "close relative" or friend that can act on his or her behalf. *Muthana*, 985 F.3d at 902. In those cases, another person can assume the mantle of next friend, provided the person can "show some relationship or other evidence that would suggest the next friend is truly dedicated to the interests of the real party." *Lonchar v. Zant*, 978 F.2d 637, 641 (11th Cir. 1992). At the same time, if the proposed next friend has little or no relationship with the real party in interest, her appointment as next friend should be viewed skeptically – as the lack of any relationship may belie the next friend's claim that she is advancing the real party's best interests. *See Coal. of Clergy, Laws. & Professors*, 310 F.3d at 1162. Although this is a flexible standard, it is consistent with the discretionary nature of Rule 17(c), which leaves the "ultimate decision as to whether or not to appoint [a next friend] . . . with the sound discretion of the district court." *Sam M. ex rel. Elliott*, 608 F.3d at 85 (internal quotation marks omitted).

Applying this standard here, we are persuaded that the district court abused its discretion by declining to appoint Doe as next friend on the legal ground that Rule 17(c) *requires* a "significant relationship." App'x at 92. Although the district

19

court had discretion to decline Doe's appointment, it was an error of law – and thus an abuse of discretion – to treat a "significant relationship" as a mandatory requirement of Rule 17(c). *See Ratliff v. Davis Polk & Wardwell*, 354 F.3d 165, 168 (2d Cir. 2003) ("Where a district court exercises its discretion premised on the misapplication of a legal principle, the court by definition abuses its discretion and makes an error of law.").[3]

Our normal practice would be to remand for the district court to revisit whether to appoint Doe as next friend under Rule 17(c) for those fetuses who face abortion. We do not do so here, however, because we conclude that Doe's claims fail for a different reason:  she lacks Article III standing because she fails to identify or otherwise describe any class member in the Viable Fetus Class who has a live case or controversy.

### B.    Article III Standing

Even if Doe were appointed next friend under Rule 17(c), it would not automatically entitle her to Article III standing.  Neither Congress statutorily nor

---

[3] The district court did not reach Defendants' alternative argument that Rule 17(c) does not permit a next friend to be appointed on behalf of a fetus.  *See* App'x at 92.  We therefore decline to consider that issue here.  *See Booking v. Gen. Star Mgmt. Co.*, 254 F.3d 414, 418 (2d Cir. 2001) ("In general, a federal appellate court does not consider an issue not passed upon below." (internal quotation marks omitted)).

the courts through the rulemaking process may "grant[] the right to sue to a plaintiff who would not otherwise have standing." *Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997); *see also Lunney v. United States*, 319 F.3d 550, 556 (2d Cir. 2003) ("Rule 17[] cannot be construed to extend subject matter jurisdiction."). And because we have an "independent obligation" to confirm our jurisdiction, we must consider the next inevitable question: whether Doe would have Article III standing even if she were appointed next friend under Rule 17(c). *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009).

When a plaintiff brings her own claims, she must establish three elements to demonstrate Article III standing: "(i) that she has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 380 (2024). As alluded to above, these requirements shift in cases where the plaintiff invokes a theory of "representative standing" to bring claims on behalf of another person. *See Bria Health Servs., LLC v. Eagleson*, 950 F.3d 378, 384–85 (7th Cir. 2020) (explaining that "next friend" and organizational standing are forms of representative standing). In these cases, the representative plaintiff satisfies

Article III by demonstrating that the other person – the real party in interest – would "have standing to sue in [his] own right." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). Thus, an organization suing on behalf of its members must "make specific allegations establishing that at least one identified member had suffered or would suffer [a] harm" that meets all three elements of Article III standing. *Summers*, 555 U.S. at 498. So too must a party seeking to sue as next friend of a minor demonstrate that the minor meets the three "irreducible" requirements of Article III. *McCormick ex rel. McCormick*, 370 F.3d at 284 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

Doe has not met these requirements. She does not identify or describe – by name, basic details, or otherwise – any member of the Viable Fetus Class who allegedly meets the injury-in-fact, traceability, and redressability requirements of Article III. Instead, she generally asserts claims on behalf of *all* viable fetuses in the state of New York who *may* be at risk of harm due to the RHA's elimination of criminal penalties for abortion and fetal homicide. These sweeping allegations cannot satisfy Doe's burden of establishing standing. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). In every case – representative standing or otherwise – the complaint must "clearly allege facts demonstrating" that there is a real party in

22

interest who has suffered (or will suffer) an injury that is actual or imminent, traceable to the defendant, and redressable by the court. *Id.* (alteration accepted and internal quotation marks omitted). This means that representative plaintiffs must "identify," with "specific allegations," who the real parties are and how they are at risk of the "requisite harm." *Summers*, 555 U.S. at 498–99. If they do not, then the representative plaintiff "necessarily cannot allege the sort of . . . actual or imminent," traceable, and redressable injury required by Article III. *Fac., Alumni, & Students Opposed to Racial Preferences v. N.Y. Univ.*, 11 F.4th 68, 79 (2d Cir. 2021) (Menashi, *J.*, concurring) ("*FASORP*").

We held as much in one of our recent representative standing cases in which an organization tried to invoke the standing of its members without describing those members and how they were harmed. In *FASORP*, a legal organization asserted that several policies at the New York University School of Law ("NYU Law") were unlawful racial and sex-based preferences. *See id.* at 71–72 (majority opinion). Among other theories, FASORP alleged that NYU Law's faculty discriminated against white males in hiring, and that its flagship law journal – the NYU Law Review – discriminated against the same group in deciding which articles to publish. *See id.* at 73. Yet in its pleadings, FASORP failed to identify or

23

describe a single professor among its ranks, let alone any details about whether that member was prepared to apply to the school's faculty or submit an article to its journal. *See id.* at 76.

We found that omission to be fatal. Even if FASORP was not required to "name names," Article III required it to allege *some* details about who the allegedly injured scholars were and how they were at risk of harm, such as by offering a "description of concrete plans to apply for employment[] [or] submit an article," *id.* at 76–77 (internal quotation marks omitted), or by showing that there were "members who are 'able and ready' to submit articles or to seek faculty positions," *id.* at 79 (Menashi, J., concurring). Because FASORP did not identify or describe its members and the injuries they allegedly faced, "it necessarily [could not] allege the sort of 'concrete plans' necessary to 'support a finding of . . . actual or imminent injury.'" *Id.* (quoting *Summers*, 555 U.S. at 496).

We do not see how the outcome would be any different here. Like FASORP, Doe seeks to invoke a third-party injury – here, an injury to a fetus – to establish Article III standing at the pleading stage. Like FASORP, she alleges in broad strokes that such a third party exists and is at risk of harm. And like FASORP, she fails to provide any description of who that third party is and the harm he faces,

24

such as the fetus's gestational age, who the pregnant mother is, the reasons why she is contemplating an abortion, whether she has visited or made an appointment with an abortion provider, how soon that appointment is, and so on. Indeed, the only potential difference is that FASORP was relying on one type of representative standing – organizational standing – while Doe is relying on another. But that is a distinction without a difference, since the same "irreducible" requirements of Article III apply to next friends and organizational plaintiffs alike. *McCormick ex rel. McCormick*, 370 F.3d at 284 (quoting *Lujan*, 504 U.S. at 560). Thus, like FASORP, Doe's failure to identify or describe any class member is fatal, as she "necessarily cannot" meet her burden of plausibly establishing that there is a real party in interest with an Article III injury. *FASORP*, 11 F.4th at 79 (Menashi, *J.*, concurring).

To be sure, there is no doubt a possibility – indeed a near certainty – that there are viable fetuses in New York who may soon be threatened by abortion or other fetal harm. But the Supreme Court has emphatically barred organizations from relying on statistics or probabilities to demonstrate the standing of their members, explaining that such theories "would make a mockery of our prior cases" that have required representative plaintiffs "to make specific allegations establishing that at least one identified member had suffered or would suffer

25

harm." *Summers*, 555 U.S. at 498. As Justice Scalia emphasized, standing "is not an ingenious academic exercise in the conceivable but requires a factual showing of perceptible harm." *Id.* at 499 (alterations accepted and internal quotation marks omitted). Thus, it is not enough for Doe to speculate that, at some point in the future, an unidentified woman may seek to obtain an abortion of an unidentified fetus from an unidentified abortion provider. She must at a minimum provide basic identifying information about that fetus and provide "an adequate description of his circumstances to ensure he has a concrete interest in a live dispute." *In re: 2016 Primary Election*, 836 F.3d 584, 587–88 (6th Cir. 2016).

Permitting plaintiff-less complaints like Doe's would invite the very sort of "advisory opinions" that Article III seeks to safeguard against. *Id.* at 588. Any number of "concerned bystanders" could exploit next friend standing to challenge state or national laws they disagree with, even though they lack a personal stake in the dispute. *Hollingsworth*, 570 U.S. at 707 (internal quotation marks omitted). Article III does not permit such circumvention. In order to bring a claim on behalf of another, a representative plaintiff must provide an "adequate description" of the real party's circumstances so that we can ensure he has suffered or faces an injury that is actual or imminent, traceable to a specific defendant, and redressable

26

by the court. *In re: 2016 Primary Election*, 836 F.3d at 588; *see also FASORP*, 11 F.4th at 76. Were the rule anything else, we would all but place standing "in the hands of concerned bystanders, who will use it simply as a vehicle for the vindication of value interests." *Hollingsworth*, 570 U.S. at 707 (internal quotation marks omitted).

To be clear, requiring litigants to identify the real party in interest will not always be an insurmountable hurdle to standing. If there is a viable fetus who faces an Article III injury from the RHA, then someone – an expectant father, other relative, or perhaps even a non-relative like Doe – may theoretically file a complaint as next friend that describes the viable fetus with sufficient specificity. Of course, there may be other jurisdictional barriers to bringing that claim, such as imminence, traceability, and redressability, and there remains the question of whether, as Defendants argue, fetuses "lack constitutional personhood" altogether. *See* Defs. Br. at 25. But we do not and need not pass on those issues today. *See Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (explaining that courts have "leeway to choose among threshold grounds" for declining to exercise jurisdiction (internal quotation marks omitted)). We merely hold that – as with organizational plaintiffs – a next friend must "make specific allegations establishing that at least one identified member had suffered

or would suffer [a] harm" that meets all three elements of Article III standing. *Summers*, 555 U.S. at 498. Because Doe failed to do so here, her claims on behalf of the Viable Fetus Class fail for lack of standing.

## II. Denial of Post-Judgment Motions

Doe also appeals the district court's denial of her motions under Rules 59(e) and 60(b), which sought to vacate the judgment so that she could file an amended complaint in light of *Dobbs*.[4] The district court denied those motions as futile because, like the original complaint, the post-*Dobbs* complaint that Doe attached to her motions failed for lack of standing. Because this decision rested on a question of law – namely, futility – we review *de novo* the district court's ruling on standing. *See Metzler Inv. GmbH*, 970 F.3d at 145.

As relevant here, the post-*Dobbs* complaint brings similar claims to the original complaint, alleging that the RHA – by expanding abortion access and decriminalizing fetal homicide – violates fetal rights to life, equal protection, and legal redress. Notably, the post-*Dobbs* complaint has a key addition: it identifies

---

[4] Doe also argues that the district court should have set aside the judgment under Rules 59(e) and 60(b) because *Dobbs* constituted a change in controlling law. But as explained in this section, her claims – including in the post-*Dobbs* complaint – fail for lack of standing, a legal determination that was unaffected by *Dobbs*. Because *Dobbs* does not alter the outcome, it is not "controlling law," and Doe is not entitled to vacatur of the judgment on that ground. *Metzler Inv. GmbH*, 970 F.3d at 142 (internal quotation marks omitted).

a fetus – Baby Nicholas – as named plaintiff of the Viable Fetus Class. App'x at 139. It also offers a basic description of Baby Nicholas, alleging that his gestational age is at least twenty-four weeks and detailing how he might be at risk of harm from domestic violence. And it proposes his mother and grandmother, Brown-Lee and Brown, as next friends to bring his claims on his behalf.

Unlike Doe's claims in the original complaint, Baby Nicholas's claims do not fail at the threshold for failing to identify the real party in interest. Although Baby Nicholas is a pseudonym, Article III does not require Brown-Lee to "name names" in order to bring claims on his behalf. *FASORP*, 11 F.4th at 75 (internal quotation marks omitted); *see also Do No Harm v. Pfizer, Inc.*, 126 F.4th 109, 122 n.7 (2d Cir. 2025) ("[A]n organizational plaintiff need not identify specific injured members by name at the pleading stage."). And in sharp contrast to the original complaint, the post-*Dobbs* complaint attempts to provide a description of the harm Baby Nicholas faces, alleging that Brown-Lee's former partner has threatened to physically attack her, which could in turn harm Baby Nicholas. Accordingly, we must assess whether that description establishes that Baby Nicholas "has a concrete interest in a live dispute." *In re: 2016 Primary Election*, 836 F.3d at 588.

29

### A.     Mootness

At the outset, Defendants argue that Baby Nicholas's claims do not present a live dispute because those claims are moot.  At the time the plaintiffs submitted the post-*Dobbs* complaint in November 2021, Brown-Lee was over twenty-four weeks pregnant with Baby Nicholas.  Because Baby Nicholas is no longer *in utero*, Defendants argue that his challenges to the RHA are moot.

In general, "a case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome."  *Comer v. Cisneros*, 37 F.3d 775, 798 (2d Cir. 1994) (internal quotation marks omitted).  For class actions, this typically means that the named plaintiff must obtain class certification *before* his claims become moot.  *See U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397–98 (1980).  But there is an important exception when the named plaintiff brings a claim that is "so inherently transitory that the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest expires."  *Comer*, 37 F.3d at 799 (internal quotation marks omitted).  Because there would otherwise be no way to bring those claims, we treat them as live even if the named plaintiffs' personal stake becomes moot before the class is certified.

30

That exception to mootness applies here.  Doe alleges in the post-*Dobbs* complaint that Baby Nicholas faces an inherently transitory harm in that he is subject to physical harm (through abortion or third-party violence) while he remains *in utero*.  And because that harm will dissipate within a matter of months, the trial court may not have enough time to rule on a class certification motion. Indeed, we have already held that a harm that will dissipate in six months qualifies as inherently transitory.  *See Salazar v. King*, 822 F.3d 61, 74 (2d Cir. 2016) (applying this exception to claims that challenged federal student loans as unlawful, even though all of the named plaintiffs' loans had already been fully discharged in six months or fewer).  And even more on point, the D.C. Circuit has held that harms which exist only during pregnancy fall within this exception, since pregnancies last only nine months.  *See J.D. v. Azar*, 925 F.3d 1291, 1311 (D.C. Cir. 2019) ("Just as [a] one-year immigration detention . . . would end too soon [to obtain class certification], so too would a full term of pregnancy.").  Because the same is true of the harms that Baby Nicholas alleges in the post-*Dobbs* complaint, his claims are "inherently transitory" and were not mooted by the fact that he is no longer *in utero*.

**B.      Standing**

Because Baby Nicholas's claims are not moot, we turn to the allegations in the post-*Dobbs* complaint to assess whether Baby Nicholas (through his proposed representatives Brown-Lee and Brown) would be able to meet his "burden" of establishing Article III standing. *Lujan*, 504 U.S. at 561. As noted above, Article III requires a plaintiff to demonstrate (1) an actual or imminent injury, (2) that is fairly traceable to the defendant's conduct, and (3) that is likely to be redressed by a favorable ruling. *See id.* at 560–61. At the pleading stage, the plaintiff "must allege facts that affirmatively and plausibly suggest" that he has met all three requirements. *FASORP*, 11 F.4th at 76 (internal quotation marks omitted).

The analysis here is complicated by the facts that Baby Nicholas's claims in the proposed amended complaint (i) challenge two parts of the RHA – abortion decriminalization and fetal homicide repeal – and (ii) seek both damages and equitable relief on those claims. Because "standing is not dispensed in gross," a plaintiff "must demonstrate standing for *each* claim that [he] press[es] and for *each* form of relief that [he] seek[s] (for example, injunctive relief and damages)." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) (emphasis added). This means that a plaintiff who has standing to challenge one law does not automatically have standing to challenge a different law, even when both challenges are brought in

the same suit. *See Town of Milton v. Fed. Aviation Admin.*, 87 F.4th 91, 97 n.3 (1st Cir. 2023). And "a plaintiff's standing to seek injunctive relief does not necessarily mean that the plaintiff has standing to seek retrospective damages." *TransUnion*, 594 U.S. at 436.

Here, this means that Baby Nicholas must separately demonstrate standing to challenge the RHA's decriminalization of abortion and its repeal of fetal homicide. Moreover, he must separately establish standing to seek damages (compensatory and nominal) and equitable relief (an injunction and a declaratory judgment). We thus begin by addressing whether Baby Nicholas has standing to seek damages, and then assess whether Baby Nicholas has standing to obtain equitable relief with respect to either part of the RHA.

### 1. Damages

At the start, we conclude that Baby Nicholas lacks standing to seek compensatory or nominal damages on either of his challenges to the RHA. As the Supreme Court has made clear, a plaintiff does not have standing to seek damages when he was exposed to a "mere *risk* of future harm" that never "materialize[d]." *Id.* (emphasis added). For instance, a woman driving home from work might be exposed to a "risk of future harm" if she comes across a reckless driver swerving

between lanes. *Id.* But so long as the reckless driver does not hit her (or cause actionable emotional distress), she may not sue him for damages, since her risk of harm never materialized into a concrete injury under Article III. *See id.* at 436–37.

For the same reason, Baby Nicholas may not seek damages here. Although he seeks to challenge two parts of the RHA – the provisions decriminalizing abortion and those repealing fetal homicide – the post-*Dobbs* complaint does not allege that Baby Nicolas has suffered a concrete harm from either. With respect to abortion decriminalization, the post-*Dobbs* complaint asserts only that Brown-Lee has "considered terminating [her] pregnancies as a way to escape the abuse" she faced at the hands of her former partner. App'x at 117–18 (alleging that Brown-Lee's former partner consistently became violent and abusive during her past pregnancies, which caused Brown-Lee to contemplate abortion). But even if the RHA's abortion decriminalization did make Brown-Lee more likely to terminate her pregnancy with Baby Nicholas, he has suffered at most an abstract risk of future harm, not a concrete form of past injury. He may not seek retrospective damages – compensatory or nominal – for his challenge to this portion of the RHA.

Damages are likewise unavailable for Baby Nicholas's challenge to the RHA's fetal homicide repeal. Brown-Lee asserts that her former partner has

34

physically harmed her in the past – before she was pregnant with Baby Nicholas – and has threatened to do so several times since. Once again, however, Baby Nicholas did not suffer any concrete harm and at most has been exposed to a possible risk of harm in the future. He therefore does not have standing to seek damages as part of this challenge to the RHA either.

2. *Equitable Relief*

Even though Baby Nicholas has suffered only a future risk of harm, he may still (in theory) seek prospective relief against the RHA in the form of an injunction or declaratory judgment. *See TransUnion*, 594 U.S. at 435. "To obtain forward-looking relief, [a] plaintiff[] must establish a substantial risk of future injury that is traceable to the [g]overnment defendants and likely to be redressed by an injunction against them." *Murthy v. Missouri*, 603 U.S. 43, 69 (2024). In "most standing disputes" involving a risk of future injury, the "two key questions" relate to imminence and traceability. *All. for Hippocratic Med.*, 602 U.S. at 381. An "imminent" injury is one that "is *certainly impending*," which means "that allegations of *possible* future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (alteration accepted and internal quotation marks omitted); *see also id.* at 414 n.5 (noting that the harm need not be "literally certain" and an

35

injury may be imminent "based on a 'substantial risk' that the harm will occur").

Traceability, meanwhile, is a causation requirement that obligates the plaintiff to

show that his injury "likely will be caused by the defendant's conduct." *All. for

Hippocratic Med.*, 602 U.S. at 382.

Applying these requirements here, we conclude that Baby Nicholas lacks

standing to bring either of his challenges to the RHA.

### a. Abortion Decriminalization

We first conclude that Baby Nicholas lacks standing to challenge the portion

of the RHA that decriminalized abortion. As explained above, these sections of

the RHA eliminated all criminal liability for performing an abortion. *See* RHA

§§ 5, 7-a to 10. The post-*Dobbs* complaint, however, fails to allege that Baby

Nicholas faces an imminent injury as a result of the RHA having decriminalized

abortion. To do so, it would have to plead that Brown-Lee has "concrete plans" to

terminate her pregnancy with Baby Nicholas. *Lujan*, 504 U.S. at 564. But Brown-

Lee does not assert that she is currently contemplating obtaining an abortion, or

even that she has done so recently. Because the post-*Dobbs* complaint does not

allege that Baby Nicholas faces an "imminent" harm now that abortion has been

decriminalized, he lacks standing to challenge those sections of the RHA. *Id.*

b.  Fetal Homicide Repeal

We likewise conclude that Baby Nicholas lacks standing to challenge the portion of the RHA that eliminated fetal homicide from New York's criminal code. Doe broadly argues that Baby Nicholas has standing to seek injunctive and declaratory relief against this RHA provision because the elimination of criminal penalties for fetal homicide creates an "enhanced risk" of harm to Baby Nicholas. Doe Br. at 38 (internal quotation marks omitted).  According to Doe, the elimination of those penalties makes it more likely that a third party will attack a pregnant woman and "kill a viable child in the womb." *Id.* at 36 (quoting App'x at 240).  Doe also offers a narrower argument that this risk is especially grave for Baby Nicholas in particular, since Brown-Lee's former partner has a history of physically assaulting her when she is pregnant.

But the post-*Dobbs* complaint does not allege that Defendants themselves – all New York state officials – are threatening to harm Baby Nicholas directly. Instead, it alleges that, because Defendants are no longer enforcing the pre-RHA fetal homicide laws, an independent *third party* will attack Brown-Lee and thus harm Baby Nicholas sometime in the future.  As the Supreme Court has explained, there are "two particular challenges" with relying on this sort of "one-step-

37

removed, anticipatory" theory. *Murthy*, 603 U.S. at 57. *First*, there are often traceability problems. In general, it is easier for a plaintiff to establish standing to challenge a law that regulates his own conduct directly. *See Lujan*, 504 U.S. at 561–62. But standing is "ordinarily substantially more difficult to establish" when, as here, the plaintiff challenges a law that regulates "*someone else*." *All. for Hippocratic Med.*, 602 U.S. at 382 (quoting *Lujan*, 504 U.S. at 562). In these cases, a plaintiff's injury will be traceable to the government's action only if the regulated third party "will likely react in predictable ways that in turn will likely injure the plaintiffs." *Id.* at 383 (internal quotation marks omitted). *Second*, allegations of potential injury from third parties raise imminence problems as well. It is not sufficient to speculate that a traceable injury might happen some day; the plaintiff must plausibly allege "a substantial risk" that such an injury will happen "in the near future." *Murthy*, 603 U.S. at 58.

Putting these two requirements together, the post-*Dobbs* complaint must plausibly allege "a substantial risk that, in the near future," someone will harm Baby Nicholas "in response to the" RHA's passage. *Id.* That is a "tall order," and one that Doe fails to meet here. *Id.*

As a threshold matter, Doe's broadest argument – that the RHA exposes Baby Nicholas to a generalized "enhanced risk" of harm from the public at large – fails on imminence grounds. Doe Br. at 37 (internal quotation marks omitted). As we have explained, this sort of standing theory, premised on "enhanced risk," requires the plaintiff to "allege[] actual future exposure to that increased risk." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016) (internal quotation marks omitted). Baby Nicholas must do more than speculate about the existence of unknown persons who might do him harm at some point. Because he must allege that such harm is in fact imminent, he cannot establish standing based on a broad theory of generalized risk. *See Clapper*, 568 U.S. at 410–11 (explaining that even an "objectively reasonable likelihood" of injury would still fall short of an "imminent[]" harm).

To be sure, the post-*Dobbs* complaint does point to one person who might pose a threat to Baby Nicholas: Brown-Lee's former partner, who has physically harmed her in the past and has threatened to do so again. But even assuming that amounts to an imminent threat, the chain of causation between the former partner's conduct and the RHA's passage is far too attenuated to be traceable to it. First of all, Doe suggests that the former partner is more likely to attack Brown-

Lee again – and harm Baby Nicholas – because "[u]nder current law there is *no deterrence* for men who would kill a viable child in the womb." Doe Br. at 36 (emphasis added) (quoting App'x at 240). But that obviously overstates the case. Even though the former partner could not be punished for fetal homicide, he would still face up to twenty-five years in prison for assaulting Brown-Lee, which would surely provide some deterrence to such an act of violence. *See* N.Y. Penal Law § 70.00(2)(b), (3)(b) (class B felonies are punishable by a sentence of one to twenty-five years); N.Y. Penal Law § 120.10 (first-degree assault is a class B felony). And as the Supreme Court has made clear, when another statute would impede the alleged harm from occurring, the "chain of causation" is broken and traceability is lacking. *All. for Hippocratic Med.*, 602 U.S. at 390 (rejecting standing theory that doctors would suffer injuries to their conscience if they had to perform an abortion, because federal and state "conscience laws" statutes would shield those doctors from repercussions if they declined to perform the abortion).

Moreover, Brown-Lee's own affidavit belies any causal link between the RHA and her former partner's violent conduct. If such a link existed, then the former partner presumably would have increased or enhanced his physical threats and violent behavior once the RHA was passed in 2019. *See Murthy*, 603 U.S. at 62

("[A] causal link is possible only if the [injury] occurred *after* [the government action]."). But Brown-Lee alleges the opposite: that the former partner physically harmed her between 2017 and 2019 but has not done so since. In other words, the former partner's violent conduct began when fetal homicide was still a crime and appears to have diminished since passage of the RHA. Based on the allegations contained in the post-*Dobbs* complaint, we do not see a plausible inference that the RHA has caused Brown-Lee's former partner to become more violent.

Such an inference is particularly weak here, since the relevant harmful conduct not only began before the RHA was passed but *stopped* soon thereafter. Even with the benefit of all plausible inferences in Baby Nicholas's favor, the post-*Dobbs* complaint alleges nothing that indicates that the RHA has caused or will cause Brown-Lee's former partner to physically harm her and Baby Nicholas. To the contrary, the only plausible inference is that the former partner's violent behavior is the result of his own "independent decision[s]," unrelated to the RHA. *Id.* at 57 (internal quotation marks omitted). This breaks the chain of causation between the RHA and Baby Nicholas, and the district court was therefore correct in denying Doe leave to amend the complaint to introduce Baby Nicholas's claims through Brown-Lee and Brown.

Baby Nicholas might have argued that the RHA's passage exposed him to a substantial risk of harm that required Brown and Brown-Lee to take steps to mitigate the risk. The Supreme Court has explained that "[i]n some instances, we have found standing based on a 'substantial risk' that the harm will occur, which may prompt plaintiffs to reasonably incur costs to mitigate or avoid that harm." *Clapper*, 568 U.S. at 414 n.4. While Brown-Lee incurred costs to mitigate the risk from her former partner before the RHA was passed, she does not allege that the passage required her to incur new costs to mitigate an additional risk.

Again, we take no position today with respect to whether a fetus may otherwise meet the requirements for Article III standing. We merely note that "those seeking to challenge the constitutionality of state laws are not always able to pick and choose the timing and preferred forum for their arguments." *Whole Woman's Health v. Jackson*, 595 U.S. 30, 49 (2021). Because Baby Nicholas does not plausibly face an Article III injury that is imminent or traceable, he may not sue Defendants over the RHA through this action.

CONCLUSION

Accordingly, we conclude that:

1.     A next friend need not demonstrate a "significant relationship" with the real party she seeks to represent under Federal Rule of Civil Procedure 17(c)(2).  The district court therefore abused its discretion in denying Doe's next friend motion on this ground.

2.     To establish standing, a next friend must identify or otherwise describe the real party in interest she seeks to represent.  Because Doe fails to do so here, she lacks standing to bring claims on behalf of the Viable Fetus Class, and the district court was ultimately correct in dismissing her claims for lack of standing.

3.     The post-*Dobbs* complaint fails to plausibly allege that Baby Nicholas's feared harm is imminent and fairly traceable to the RHA's passage.  The district court was thus correct in denying Doe's motion to amend the complaint to add Baby Nicholas's claims for lack of standing.

For these reasons, we **AFFIRM** the judgment of the district court.